Mr. Justice Morris
delivered the opinion of the Court:
The appellee, Ida I. Rockwell, is a married woman; and this is a suit instituted by her in her own name without the joinder of her husband to recover compensation for injuries to her person alleged to have been sustained by her through the negligence of the appellant. The declaration, after the statement of the circumstances of the injury, alleged that, in consequence thereof, she suffered great pain of body and mind and was hindered from transacting her *374 lawful affairs and business, and compelled to expend considerable sums of money in the endeavor to be cured of her wounds. To this declaration the defendant, here the appellant, pleaded the plaintiff’s coverture in abatement of the suit. The plaintiff demurred to the plea; and the demurrer was sustained. From the order sustaining the demurrer the defendant was allowed a special appeal to this court. The question, therefore, which is presented for our determination, is whether, under the law now in force in this District, a married woman may sue in her own name, without the joinder of her husband, to recover compensation for personal injuries sustained by her through the negligence of another person.
The question is not without difficulty. Under the former Married Woman’s Act in force here, that of April 10, 1869, carried into the Revised Statutes for the District as sections 727, 728 and 729, it was held by the Supreme Court of the District in general term, in the case of Snashall v. Railroad Co., 19 D. C. Rep. 407, that a married woman could not maintain such a suit in her own name. And in the case of Howard v. Railroad Co., 11 App. D. C. 337, we applied the rule of that case, although not entirely satisfied with the reasoning by which it was supported. But the case of Howard v. Railroad Co., although it did not come before us until 1897, arose and was instituted, like the Snashall Cáse, under the act of 1869. We can not regard either one of them as throwing much light on the application of the Married Woman’s Act now in force, that of June 1, 1896 (29 Stat. 193). Nor, in view of the varying terms in which similar statutes in other States are expressed, can we find any great amount of illustration in the judicial decisions which have been founded upon them.
The act of June 1, 1896, was undoubtedly a very great enlargement of the provisions of the act of April 10, 1869. The act of 1869 secured to the married woman the control and disposition of her separate estate derived to her in any *375 other way than by gift or conveyance from her husband, and gave her the right to contract and to sue and be sued in regard to it independently of her husband. But, as was pointed out in the case of Wills v. Jones, 13 App. D. C. 497, it was very far from the emancipation of married women from all the restraints and disabilities of the common law ; and it was the purpose of subsequent legislation to remove some or all of these disabilities. This was sought to be accomplished by the act of June 1, 1896.
This later act authorizes the married woman, in addition to the provisions of the act of 1869, to acquire property to a qualified extent by gift or conveyance from her husband; to bind herself and her separate estate for necessaries purchased by her or furnished at her request for her family; and to carry on any trade, business, occupation, or profession, by herself or jointly with others, and to perform any .labor or services on her sole and separate account; and it declares that her earnings from any or all these sources should be her own sole and separate property, and might he used and invested by her in her own name. It then re-enacts in the same identical words the section 729 of the Revised Statutes to the effect that “ a married woman may contract, and sue and be sued in her own name in all matters having relation to her sole and separate property, in the same manner as if she were unmarried; ” but it adds this clause, which was not in the act of 1869, “ and her husband shall be joined with her when the cause of action is in favor of or against both her and her husband.”
Notwithstanding that the power to contract, and to sue and be sued, conferred by the act of 1896, is in the identical words of the corresponding provision of the act of 1869, omitting consideration of the last clause, it is very clear that its scope is greatly wider than it was under the act of 1869, for the reason that the married woman’s power to acquire property and to enter into business is greatly enlarged, and the right of suit • is necessarily co-extensive *376 with the right of property and the right to transact business. Of this enlargement we had an illustration in the case of Wills v. Jones, 13 App. D. C. 497, in which we held that, under the act of 1896, a married woman conducting a business in her own right was entitled to maintain a suit in her own name for a libel published against her with respect to that business.
Now, if the declaration in the present case alleged that the plaintiff was carrying on a business on her own account, as by the statute she was authorized to do, and that through the negligence of the defendant she was so injured in person as that she was incapacitated from attending to such business and was thereby pecuniarily damaged, it would be difficult, in our opinion, to distinguish this case from that of Wills v. Jones. It would seem to make no difference whatever in principle whether a married woman was injured in her business by a libel published concerning her in regard to it or by a personal injury which prevented her from conducting it. The injury in either case would be an injury to her in her business, and consequently an injury against which she would have the right to protect herself by suit in her own name. Is it of any consequence that in this declaration she has not distinctly and positively alleged that she was engaged in the conduct of any business which was damaged in consequence of the personal injury sustained by her ? And is it of any consequence whether she was actually engaged in business at all as a preliminary to suit and recovery in her own name ?
The answer to the first of these questions would seem not to be difficult. While it is true that the plaintiff in her declaration does not state positively that she was engaged in business which was damaged by the injury which she suffered, she does state that, in consequence of the injury, she was damaged in the transaction of her lawful business; and as the only lawful business which she could properly carry on was that which she was authorized by the statute to *377 transact, we do not see what good purpose could be sub-served by a more distinct or minute allegation. The cause of action is the personal injury; the specification of damage is to her business; she is entitled equally with a man or an unmarried woman to carry on any business whatever which she pleases; why then should she be required, any more than a man or an unmarried woman, to specify what her business is, or to allege that she is in any business? If, perhaps, the law restricted her to certain classes of business, it might possibly be necessary by proper allegation to bring herself within one of those classes; but when the law makes her legally competent to enter into any business which she may choose to undertake, we do not see that there is here any greater necessity for specific allegation than there would be in the case of her husband or of her unmarried sister.
But is it of any consequence whether the plaintiff is actually engaged in any business on her own account? Clearly the purpose of the statute is not merely that a married woman may, without the control of her husband, transact any business in which she is engaged, but likewise that she should at all times be entirely free to select such business and to enter upon it. Her emancipation from marital control is not confined merely to the conduct of the business after she has once entered upon it; it extends equally to her preliminary capacity to select it and prepare for it. A married woman, for example, is entitled by the statute to practice medicine; but in order to do so she must prepare herself for it by a proper course of study. Must we hold that she can not sue in her own name for a libel published concerning her and her intended profession, while she is in this preliminary stage of preparation, when, under the decision in the case of Wills v. Jones, we must hold that she can so sue for such a libel after she has been admitted into the ranks of the medical profession by the acquisition of a proper certificate? We see no good ground for any such distinction. On the contrary, we think that such a distinction *378 would be contrary both to the letter and the spirit of the-law; and no doubt the result of so holding would be an application to the legislative authority to declare more explicitly and in express terms what it supposed it had already done by the sweeping terms of its existing grant. In view of the manifest purpose of the legislature in the enactment before us, we see no good reason for a- narrow and illiberal construction which would tend merely to thwart that purpose temporarily. The right to conduct a business or profession implies the right to guard one’s capacity to enter upon it; and whatever destroys or impairs that capacity is as much an injury, in the contemplation of law, to the person affected as would be an illegal hindrance to the business itself. We do not see why a married woman, having the free and unrestricted authority at any and all times to enter into any lawful business whatever, equally with a man or with an unmarried woman, is not entitled, by virtue of that authority, to the same protection of the law for her capacity to enter into it as she is for its conduct after she has entered into it.
The position undoubtedly is well taken, that, in general, the common law is not to be regarded as repealed by implication, unless the implication necessarily operates as such repeal; and that, under the common law, the husband must be joined with the wife in suits to recover compensation for personal injuries done to her, and she can not sue alone. And it is true that there is no express authority in the act of Congress of 1896, any more than in the act of 1869, that would confer upon a married woman the right to institute and conduct such a suit in her own right and in her own name. But the purpose of the act of 1896 to strike down all the restraints interposed by the common law to the entry of married women into all the business affairs of life for which they find themselves competent, is too plain to be ignored. The uniform tendency of all modern legislation in all the civilized countries of the world is towards the complete *379 emancipation, of married women from all the disabilities imposed by the old feudal law; and many of the States of our Union have carried the tendency to its extreme limit in their enactments on the subject. But this is not the only subject on which we have repudiated the doctrines of the common law; nor is it apparent to us why we should cling to that system in this regard any more than we should in reference to the law of primogeniture or the barbarous criminal code of other days. On the contrary, it would seem that, while the common law remains our law and should be adhered to until it is changed by statute or repudiated because of its repugnance to our altered conditions, yet, when a policy wholly antagonistic to the provisions of that law is established by statute, approved by the public sentiment of our country, and consistently pursued by the legislature, it should be the duty of the courts, not to resist the legislative enactment, but to give all proper effect to its manifest purpose.
In our opinion, it was the purpose of Congress in the act of June i; 1896, to restore to married women, or rather to continue in them, the power, which they had before marriage and would have in the absence of the marital relation, freely to control their own persons and their own actions; to remove and destroy the common law authority of their husbands, so far as that authority rested upon mere force; and to leave the marital relation to be supported by the power of affection alone. The act does not impair the right of the husband to institute suit for injury to the marital relation; nor does it prohibit the husband and wife from joining in suits for trespass against the wife, if they elect to regard the trespass as committed against the marital relation. But if the wife chooses to regard the trespass as directed against herself alone, and as impairing her capacity to conduct her business or to enter into business, we think that the statute is sufficient warrant for her to institute suit in her own name.
*380 It does not seem to us that the course of judicial decision in Maryland or in other States, to which, we are referred by counsel, is antagonistic to the views which we have expressed. Those decisions, as we have intimated, are based upon statutory enactments differing very greatly in scope and effect from the act of Congress of June 1, 1896. Most strongly in point, perhaps, from the view of the appellant is the case of Wolf v. Bauereis, 72 Md. 483. In that case it appears that there was a provision of the Code of Maryland by which any married woman was authorized to “sue in her own name upon any cause of action, without the necessity of a prochein ami, as if she were a feme soleand yet the court held that this did not give a married woman the right to sue in her own name for an injury to her person, without the joinder of her husband. But, as the Court of Appeals of Maryland is careful to point out, this provision of the law of that State does not stand alone, and must be construed in connection with the remainder of the act in which it is found, and where it does not appear as an independent sentence, but only as a dependent clause in a sentence. So considered, it appears to refer only to the causes of action previously mentioned in the act in which suit could be maintained against her in her own name and right. We can not regard this decision as throwing any light upon our statute, in which the power to conduct business, and consequently the right of action, is subject to no limitation whatever, either express or implied. And the same remark, in greater or less measure, is applicable to all the other cases cited on this point by the appellant.
Of course, the limitation in the last clause of the fourth section of the act of 1896, to the effect that the husband and wife must be joined when the cause of action is in favor of or against both of them, has no application to the present case. For the cause of action here, even at common law, is that of the wife alone. It dies with her, if she dies during *381 the coverture, before there is judgment upon it; and it survives to her, if she survives the coverture, and it has not in the meantime been reduced to judgment and to possession by the husband; and the husband, at common law, is joined in the suit merely on account of his marital right to control the action, and his subsequent right to reduce the fruits of the judgment into possession. It is not a cause of action in favor of both husband and wife; and it is not so claimed on behalf of the appellant.
We are of opinion that the Supreme Court of the District of Columbia was right in the view which it took of the law in this case; and therefore that the order appealed from should be affirmed, with costs. ■ The cause will be remanded to that court for further proceedings therein according to law. And it is so ordered.