HARRY P. STRASBAUGH AND WILLIAM SILVER,
PARTNERS, TRADING AS STRASBAUGH, SILVER & CO.,

*vs.*

STEWARD SANITARY CAN COMPANY OF DELA-
WARE, MARYLAND AND VIRGINIA;
A CORPORAT.ON.

*Foreign Corporations*: *Certificate of Secretary of State; sub-
stantial compliance sufficient; filed after suit begun.
Amendment to declaration: question whether consti-
tutes new suit. Contracts with agents:  ·
damages to principal; special dam-
ages; speculative—.*

The certificate of the Secretary of State required by section
93 of Article 23 of the Code of 1912, to the effect that a for-
eign corporation has complied with all the provisions of the
law that are, by the statute, made necessary before such cor-
poration is allowed to do business within the State, is sufficient
if it is in substantial compliance with the law.          p. 640

The admission of such certificate in evidence can not be suc-
cessfully objected to, in a suit by such corporation, upon the
ground, merely, that it is dated after the date of the institu-
tion of the suit or the filing of pleas by the defendant.     p. 640

The wrongful admission of evidence is not a reversible error,
if it appears that the party excepting to it was not injured by
its admission.                                       p. 641

If by an amendment to a declaration a new cause of action
is made, then, in considering whether a plea of limitation filed
constituted a good defense, the time for the running of the
statute is to be taken as extending to the date of such amend-
ment.                                                p. 642

Where the amendment to a declaration involves the same
cause of action, on the same consideration, and leaves unchanged
the liability of the defendant, it is not to be taken as a change
of the cause of action, although in the amendment reference

is made to a preceding contract upon which the contractors' suit was based, and which preceding contract was not mentioned in the original declaration.                          pp. 642-643

Where a contract was made with the agents of a corporation, as such agents, so that the agents might maintain an action in their own names to recover damages sustained by their principal for the breach of the contract, such agents in a suit against them brought upon such contract, may recoup for such damages as their principal has sustained.                          p. 647

When parties have made a contract which one of them has broken, the damages which the other party ought to receive should be such as may fairly and reasonably be considered as arising either naturally—that is, according to the usual course of things—from such breach itself, or, such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of its breach.                          pp. 648-649

If the special circumstances under which the contract was actually made were communicated by the plaintiff to the defendant, and thus known to both parties, the damages resulting from the breach of such contract which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach under the special circumstances so known and communicated.                          p. 649

If such special circumstances were wholly *unknown* to the party breaking the contract, he, at the most, can only be supposed to have had in his contemplation the amount of injury which would arise generally, and in a great majority of cases, not affected by any special circumstances, for such a breach.

p. 649

If the special circumstances had been known, the parties might have specially provided for the breach of contract by special terms as to the damages in that case, and of this advantage it would be unjust to deprive them.                          p. 649

In actions *ex contractu,* wherever it is reasonably certain or apparent that profits would have been realized had the contract been completed according to its terms, and the profits of the bargain are the only things purchased or contracted for,

and are the direct and immediate proof of the contract, there, though the *amount* of the profits be open to dispute or controversy, still, such profits as the evidence shows would have resulted but for the breach of the contract by the defendant, are a legitimate element of damages; but whenever it is purely problematical whether any profits would have been realized at all by reason of contingencies which might never happen or where the profits have reference to dependent and collateral engagements entered into on the faith of the performance of the principal contracts, then, without regard to any uncertainty as to mere *amounts,* probable profits can not be recovered because too speculative, indefinite and remote.          pp. 649-650

*Decided January 26th, 1916.*

Appeal from the Court of Common Pleas of Baltimore City.  (DAWKINS, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*S. A. Williams* and *D. G. McIntosh* (with whom was *Philip H. Close* on the brief), for the appellant.

*Thomas H. Robinson* and *William E. Bonn* (with whom was *Henry A. Whitaker* on the brief), for the appellee.

PATTISON, J., delivered the opinion of the Court.

In this case an action was brought by the appellees against the appellants in the Circuit Court for Harford County, on the 19th day of May, 1908, and was on the 13th day of October, 1913, removed from that Court to the Circuit Court for Baltimore County, and was again removed on the 13th day of April, 1914, to the Court of Common Pleas of Baltimore City, where it was tried before a jury and a verdict was rendered in favor of the plaintiff for the sum of one thousand one hundred dollars ($1,100.00), upon which a judgment was thereafter entered.  It is from that judgment that this appeal is taken.

The first declaration appearing in the record is the amended declaration filed August 9th, 1912. This contained the seven common counts and two special counts. These special counts read as follows:

"8th. For that whereas the said Leonard Steward and John A. Steward, partners trading as L. & J. A. Steward, were on or about the 25th of August, in the year 1906, engaged in the manufacture and sale of tin cans for the packing of fruits and vegetables, and the defendants were engaged in such business as made convenient and necessary the purchase by them of such cans, and the defendants, *on or about the day and date aforesaid,* purchased from said Leonard and John A. Steward, partners, trading as L. & J. A. Steward, forty-three thousand six hundred and fifty (43,650) inch tin cans at a cost of twenty dollars for each and every thousand, and the said Stewards bargained, sold and delivered said cans to said defendants, and whereas, subsequently thereto, to wit, on or about the * * * day of * * * in the year * * * , the said Leonard Steward and John A. Steward, partners as aforesaid, bargained, sold, set over and assigned all their property of every description in the States of Delaware, Maryland and Virginia, including chattels, choses in action, book accounts, business and goodwill to the plaintiff, which then and there became the owner thereof, and although due demand has been made for the payment of the same, the defendants have failed so to do; and

"9th. For that whereas the said Leonard and John A. Steward, partners trading as L. & J. A. Steward, were, on or about the 25th of August, in the year 1906, engaged in the manufacture and sale of certain sanitary capping machines, which were used for the purpose of sealing tin cans used for the packing fruits and vegetables, and the defendants were engaged in such business as made it convenient and necessary for them to purchase or hire such capping machines, and the said defendants, *on or about the day and year*

*aforesaid,* hired from said Leonard and John A. Steward, partners, trading as L. & J. A. Steward, one of said machines at a rental of $75.00 for the packing season of 1906, and the said Stewards delivered said machine to said defendants for that purpose, and whereas, subsequently thereto, to wit, on or about the * * * day of * * * , in the year * * * , the said Leonard Steward and John A. Steward, partners as aforesaid, bargained, sold, set over and assigned all their property of every description in the State of Delaware, Maryland and Virginia, including choses in action, book accounts, business and good-will, to the plaintiff, including their charge for said rental against the said defendants, which charge then and there became the property of the plaintiff, and although demand has been made for the payment of the same, the defendants have failed so to do."

Upon demand being made, the plaintiff filed the following bill of particulars:

"Shipped August 25th, 1906.

"Harry P. Strasbaugh and William Silver, formerly partners, trading as Strasbaugh, Silver & Company,

To

"The Steward Sanitary Can Company of Delaware, Maryland and Virginia, assignee of L. & J. A. Steward,                                  Dr.

"To 43650 five inch (5 in. x 4¼ in.) sanitary cans at $20.00 per thousand (purchased August 25th, 1906) ....................$873.00

"To hire of one automatic feed double seamer sanitary capping machine for season of 1906. . ..............................  75.00

"Both shipped by L. & J. A. Steward on order and credit of Strasbaugh, Silver & Company, Townsend, Delaware.)

"To interest on same from date of delivery."

To the above amended declaration the defendant pleaded:

"(1) That there is no such corporation as the Steward Sanitary Can Company of Delaware, Maryland and Virginia; and (2) that the defendants never promised as alleged; and (3) never were indebted as alleged."

The plaintiff joined issue on the second and third of these pleas, and traversed the first, and thereafter the defendants filed a fourth plea alleging in substance that the plaintiff had not complied with Section 93 of Article 23 of the Code of 1912.

To this plea a replication was entered short upon the docket, and issue joined thereon. In the course of the trial the plaintiff offered in evidence a copy of the certificate of incorporation or charter granted to the plaintiff under the laws of New Jersey, certified to by the Secretary of State of the State of New Jersey, which was admitted without objection. The plaintiff next offered the following certificate:

"The State of Maryland,

"Office of the Secretary of State.

"I, Robert P. Graham, Secretary of State of the State of Maryland, do hereby certify that the Steward Sanitary Can Company of Delaware, Maryland & Virginia, a corporation, created under the laws of the State of New Jersey, has complied with the requirements of section 68 of Article 23 of the Code of Public General Laws of Maryland,* by filing in this office a duly certified copy of its charter or certificate of incorporation; a certificate, signed by its president, treasurer or a majority of its board of directors, showing its corporate name; the names and addresses of its president, treasurer, secretary and the members of its board of directors; its principal office in this State and in the State of its incorporation; the amount of its capital stock authorized and issued; the number and par value of its shares of stock and the amount

---

*Sec. 68 of Ch. 240 of the Acts of 1908; Sec. 93 of Art. 23 of the Code of 1912.

paid in thereon; the names and addresses of its share-
holders in this State and number of shares of stock
held by each; and the amount of capital employed in
this State.

"That the said corporation has appointed Mr. Henry
A. Whitaker, of Bel Air, Maryland, as its agent to
reside in the State of Maryland, upon whom legal
process against the corporation may be served, and
has certified its willingness that so long as any liabil-
ity remains outstanding against it in this State, the
authority of such agent shall continue until a substi-
tute is appointed and certified to the Secretary of
State; and has paid to the State of Maryland the
statutory registration fee of twenty-five dollars.

"I, therefore, hereby further certify, that the said
corporation is entitled to transact business in the State
of Maryland.

"In testimony whereof, I hereunto set my
hand and caused to be hereto affixed my
official seal, at Annapolis, this 5th day
of March, 1915.

"(Seal)                    Robert P. Graham,
                    "Secretary of State."

The defendants objected to the admission of this certifi-
cate in evidence, and the objection being overruled an excep-
tion was noted to the ruling of the Court thereon.

Section 93 of Article 23 of the Code of Public General
Laws (1912) or sections 137-138 of said Article 23 of the
Code of 1904, after the passage of the Acts of 1898, Chapter
270, of this State provides that:

"Every foreign corporation which has a usual office
or place of business in this State, * * * shall, before
doing business herein, file with the Secretary of State,
who shall record the same, (1) a certified copy of its
charter or certificate of incorporation; (2) a certifi-
cate to be renewed annually before the first day of
April in every year, subscribed and sworn to by its
president or treasurer, or a majority of its board of

directors and accompanied by the annual fee of one dollar for recording such renewal, showing (*a*) the corporate name; (*b*) the names and addresses of its president, treasurer, secretary and the members of its board of directors; (*c*) its principal office in this State and in the State of incorporation; (*d*) the amount of its capital stock authorized and issued, the number and par value of the shares and the amount paid in thereon, and the names and addresses of its shareholders in this State, and the number of shares held by each, and the amount of its capital employed in this State; (*e*) the name and address of its agent, resident in this State, and authorized to accept service of process upon it; and (*f*) its willingness that so long as any liability remains outstanding against it in this State, the authority of such agent shall continue until a substitute is appointed and certified to the Secretary of State. At the time of filing the original papers required by this section every such foreign corporation shall pay to the Secretary of State for the use of the State, a fee of twenty-five dollars, *upon receipt of which he shall issue to it the certificate setting forth that it is entitled to do business in this State.*"

And section 94 provides that:

"Every officer of any such foreign corporation which fails to comply with the provisions of the preceding section, and every agent of such non-complying corporation, who transacts business for it in this State, shall be guilty of a misdemeanor and liable to a fine of two hundred dollars. Such failure shall not affect the validity of any contract made with such non-complying corporation, but no suit shall be maintained in any of the courts of this State by any such corporation until it has complied with the requirements of this article."

This certificate was offered under the defendant's fourth plea which alleges that the plaintiffs have not complied with the requirements of said section 93 of the Code. The coun-

sel for the defendants contended, as is disclosed by the record, that, by the introduction of this certificate in evidence, the judgment of the Secretary of State was improperly substituted for that of the Court in determining the question whether or not this section of the Code had been complied with by the plaintiff corporation, and insisted that the papers filed with the Secretary of State, properly certified to by him, and not such certificate, should have been offered in evidence to show a compliance with the statute.

It is one of the requirements of the statute that the Secretary of State shall, as evidence of a compliance therewith, issue to the corporation a certificate setting forth that it is entitled to do business in this State when it has done those things which are required of it by the statute.

The certificate in this case is a substantial compliance with this provision of the statute, and, we think, is admissible in evidence, without the introduction of the papers themselves, from which the certificate is made. It is true that the certificate is dated after the filing of the plea, but this, we think, is immaterial in view of the decision of this Court in the case of *Kendrick & Roberts* v. *Warren Brothers,* 110 Md. 47. In that case the defendant had not, at the time of the institution of the suit, complied with section 137 of said article of the Code of 1904, containing provisions similar to those found in section 93 of the present Code, but thereafter during the progress of the suit complied with such provisions of the statute.

It was contended by the defendant that the suit could not be maintained because of the provision contained in section 140, that, "no such foreign corporation shall be permitted to maintain any action either at law or equity in the Courts of this State until the provisions of section 137 shall have been complied with." But this Court held that the plaintiff was not "prohibited from prosecuting and maintaining its suit after a compliance * * * after the institution of the suit." What was there said of that case, applies, we think, to the facts of this case and thus we find no error in the rulings

of the Court below in admitting such certificate in evidence.

The second exception was to the action of the Court in permitting the witness for the plaintiff to state that the market value of the cans sold was twenty dollars per thousand, the price at which the declaration alleges the cans were sold. The admission of this testimony could not have injured the defendants, even should it be regarded as wrongfully admitted.

George H. Steward, a witness for the plaintiff, was asked upon cross-examination: "Q. The cans which were shipped August 25th to which you have read the bill, when were they ordered? A. I understand that they were included in the contract of May 4th." The plaintiff then moved "to strike out the evidence already offered in reference to goods alleged to have been sold on August 25th." In passing upon this motion the Court addressing the counsel for the plaintiff said "the idea of it is that you have distinctly declared upon the sale made August, 1906, if there was anything leading up to that—if there was a prior sale or that was a consummation of a previous contract, there was nothing in the declaration to show that." Whereupon the plaintiff asked and obtained leave to amend its declaration by interlining in both the eighth and ninth counts the words "and prior thereto" and by striking therefrom the words "on or about the day or date aforesaid" and inserted in lieu thereof, "in pursuance of a contract dated May 4th, 1906." The counts when so amended read as follows:

> "8th. For that whereas the said Leonard Steward and John A. Steward, partners trading as L. & J. A. Steward, were on or about the 25th day of August, in the year 1906, *and prior thereto,* engaged in the manufacture and sale of tin cans for the packing of fruits and vegetables, and the defendants were engaged in such business, as made convenient and necessary the purchase by them of such cans, and the defendants *in pursuance of a contract dated May 4th,* 1906, purchased from," &c.

"9th.   For that whereas the said Leonard and John
A. Steward, partners trading as L. & J. A. Steward,
were, on or about the 25th day of August, in the year
1906, *and prior thereto,* engaged in the manufacture
and sale of certain sanitary capping machines which
were used for the purpose of sealing tin cans used for
the packing fruits and vegetables, and the defendants
were engaged in such business as made it convenient
and necessary for them to purchase or hire such cap-
ping machines, and the said defendants, *in pursuance
of a contract dated the 4th day of May,* hired from
the said Leonard and John A. Steward," &c.

The bill of particulars was also amended by striking there-
from the italicized word "purchased" and inserting in lieu
thereof the word "shipped."

Upon the filing of the amended declaration the defendant
filed pleas of limitation to the amended eighth and ninth
counts, which, upon motion of the plaintiff, were not received
by the Court.   It is the contention of the defendant that the
declaration as amended contains a new cause of action, and
that the pleas of limitation were at such time properly pleaded
thereto, and should have been received by the Court.   If by
such amendment a new cause of action was set up, the con-
tention of the defendant, no doubt, is correct by the decisions
of this Court.   *Schulze* v. *Fox,* 53 Md. 37; *Wolf* v. *Bauereis,*
72 Md. 481; *W. U. Tel. Co.* v. *State, use of Nelson,* 82 Md.
293; *Hamilton* v. *Thirston,* 94 Md. 253; *Zier* v. *Chesapeake
Railway Co.,* 98 Md. 35; *Di Giorgio Co.* v. *Stock,* 116 Md.
201; *Schuck* v. *Bramble,* 122 Md. 411; *Spencer* v. *B. & O.
R. R. Co.,* 126 Md. 194.   But in our opinion the cause of
action is the same as that found in the preceding amended
declaration.

The plaintiff by the eighth count of the first amended dec-
laration seeks to recover the purchase price of 43,650 cans
purchased, as the declaration alleges, by the defendant from
L. & J. A. Steward, assignors of the plaintiff, on or about

August 25th, 1906, at the stipulated sum of twenty dollars per thousand.

In the eighth count of the declaration as amended, the plaintiff seeks to recover the purchase price for the same number and size of cans at the same price per thousand, and bought from the same parties, although it does not allege therein that such purchase was made on or about the 25th day of August, but alleges it was made in pursuance of a contract dated May 4th, 1906, although as disclosed by the evidence in the case the cans were not shipped until the 25th day of August, 1906.

The cases of *Hamilton* v. *Thirston, supra,* and *Di Giorgio Co.* v. *Stock, supra,* where it was held that the cause of action was changed, or a new cause of action set up by the amended declaration, were both cases where the form of action was changed by such amendment, and in the more recent case of *Schuck* v. *Bramble, supra,* where it was also held that the amended declaration contained a new cause of action, the amendment changed the liability of the defendant, but in this case neither the liability or the form of action is changed by the amendment to the declaration, and the consideration was the same.

The fact that the contract of May 4th, 1906, was not mentioned in the first amended declaration, pursuant to which the goods were thereafter delivered on or about August 25th, 1906, cannot, we think, have the effect of changing the cause of action. It is nevertheless one and the same cause of action, and should be so treated.

What we have said of the eighth amended count also applies to the ninth.

After amending the declaration the following contract was then offered in evidence:

"Aberdeen, Md., May 4th, 1906.

"Bought of L. & J. A. Steward, Rutland, Vt., one carload of five and one-half inch (5½ in. x 4¼ in.) sanitary cans at $23.00 per thousand, and one carload of five inch (5 in. x 4¼ in.) sanitary cans at $20.00

per thousand, F. O. B., Rutland, Vt.  To be shipped
before June 15th, 1906, at option of seller.

"Terms: Cash as soon as cans are unloaded in fac-
tory, and count found to be correct.

"All cans (except two to the thousand) guaranteed
against leaks from imperfect manufacture.

"Ship to Wright Canning Co., Townsend, Dela-
ware, P. R. R., c/o Del. Div. at Wilmington, Del.

"The said Stewards agree to furnish us with one of
their automatic feed 'double seamers' (adjustable for
both the above sizes) for closing the above cans, at a
rental of $75.00 for the season of 1906, and if we want
to buy the said machine at the end of the season
(Oct. 15th) we may do so for the sum of $450 less
the $75. already paid for rent.

                "(Signed)   Strasbaugh, Silver & Co.,     .
                                    "Purchasers."

The counsel for the appellants, in the trial of the case
below took the position that the appellants were, in the
matter of the above contract, factors of the Wright Canning
Company; as shown by the facts of the case, including the
agreement between them and said Company, and that as
such factors, "they could sue upon the contract for its breach
as though they were principals, or, in a suit for the price
of the goods under the contract, they could recoup all dam-
ages sustained by the breach of the contract; whether to their
principal or to themselves," and so offered evidence tending
to show that their principal, the Wright Canning Company,
had sustained damage by the breach of the contract on the
part of the plaintiff.  But the Court below refused to admit
such evidence, and confined the defendants to the proof of
such damage as was sustained by them, as principal.

In the case of *U. S. Telegraph Co.* v. *Gildersleve,* 29 Md.
246, the suit was brought to recover damages resulting from
the appellant's failure to transmit a telegraphic dispatch to
Dibble & Cambloss, stock brokers in New York.  The dis-
patch, directing the sale of gold, was signed by Gildersleve,

the appellee, a stock broker in Baltimore City.  A. B. Patterson, also a broker in Baltimore, was appellee's customer, for whom the appellee was in the habit as broker, of buying and selling gold and stock in New York, through the agency of Dibble & Cambloss.  That, by arrangement previously made between appellee and Patterson, for the purpose of saving trouble to them both, instead of Patterson being required to give orders to the appellee for such purchases and sales, and the appellee being required to send them to his correspondents, Patterson was authorized to send orders in the appellee's name, and on his responsibility and account, to Dibble & Cambloss, for the purchase or sale of stock or gold; and that, by this arrangement, the appellee was entitled to his commissions on purchases and sales made in compliance with such orders, and the rights and liabilities of the appellee and Patterson respectively, in reference to the orders so sent, were in all respects the same as if Patterson had given the orders to the appellee, and the latter had transmitted or undertaken to transmit them to Dibble & Cambloss, in his own name; Patterson not being known to, and having no connection with Dibble & Cambloss, except through the appellee.  That, under said arrangement, on the 9th March, 1865, at about 3:40 P. M., the message in question, addressed to Dibble & Cambloss, was left by Patterson's direction, at appellant's office, in Baltimore, and that the appellant, by its agents, undertook to send and deliver it to the parties to whom it was addressed.  That the message was sent to the office without the knowledge or special direction of the appellee, but that he was soon after informed of it, and fully sanctioned it.  It was also shown that appellee had, on the day of the date of the message, $200,000 of gold to his credit with Dibble & Cambloss, and of that sum, as between appellee and Patterson, $95,000 belonged to the latter.

One of the questions raised in that case was whether the appellee, Gildersleve, could maintain the action, and recover more than nominal damages for the default of the appellant.

The Court said: "Upon such state of facts, the appellee was clearly the agent of Patterson, and, as such agent, held and controlled the gold of his principal. It was embraced in the appellee's account, and he had credit for it, in the books of his correspondent, and no other person than himself could have withdrawn it or disposed of it. And, apart from the fact that he had a special property or interest in the gold of his principal thus at his disposal, he was beneficially interested, at the time of the order given, to the extent of commissions on the sale. And where an agent is thus interested, as for commissions, or by reason of special property in the subject-matter, and the contract, in reference thereto, is made in his name, it is perfectly competent for him to sue and maintain an action in his own name, as if he were the principal. * * * And if, in the instances mentioned, the agent can sue and recover the full measure of damages, we can see no reason why the appellee, looking to his relation to this transaction, may not recover the full amount of damages resulting from a breach of the contract with the appellant. He, of course, sues and recovers as trustee for his principal."

The principle laid down in the above case applies, we think, to the facts of this case.

The firm of Strasbaugh, Silver & Co. at the time of the execution of the contract was composed of Harry P. Strasbaugh and William Silver, the defendants in this case; Harry P. Strasbaugh was also president of the Wright Canning Company, which was operating a canning factory in Townsend, Delaware, and with William Silver owned forty-nine per cent of the stock. George E. Wright was its treasurer and manager, and the owner of most of the remaining stock. All of these gentlemen lived in or near Aberdeen, Harford County, Maryland. The firm of L. & J. A. Steward was represented by George W. Evans, also a resident of Aberdeen, with whom Messrs. Strasbaugh & Wright and others associated with them in the Wright Canning Company, had been negotiating for months prior to the execution of the con-

tract, for the purchase of sanitary cans and the hiring of the machine with which the tops were fastened and crimped upon such cans, and from whom they finally agreed to purchase the number of cans mentioned in the contract, and to hire a machine from L. & J. A. Steward, through Mr. Evans, their agent; and the contract therefor was accordingly written to be executed by the Wright Canning Company and the vendors, but when presented to them—the officials of the Wright Canning Company—the terms of payment provided for sight draft against bill of lading. These terms were objected to because they afforded no opportunity to inspect the cans before paying for them.

Evans, however, said that because the Wright Canning Company was not known to the sellers, they were unwilling to accept other terms of payment. Mr. Strasbaugh then suggested to Mr. Evans that they would buy the cans from L. & J. A. Steward "for the Wright Canning Company" if the sellers would ship the cans on their account. This proposition was accepted and the above contract was written and executed.

The record also discloses that the defendants had a contract with the Wright Canning Company that was in force in the year 1906, by which they were to furnish certain supplies and materials, and advance money, to said Company to be used in the operation of its factory, and the Company was to place with the defendants for sale its entire pack of canned goods, and out of the proceeds of the sale they were to reimburse themselves for supplies and money furnished and advanced by them.

Upon the facts as stated, the defendants were the agents of the Wright Canning Company, and as such could maintain an action, brought in their own name, to recover damages sustained by their principal in consequence of a breach of the aforesaid contract, and as they could maintain such action when instituted by them, they can, in a suit against them, brought upon the contract, recoup for such damages.

The defendants offered evidence tending to show that rely-
ing upon the contract made with the plaintiff, the Wright
Canning Company, through the defendants, sold tomatoes
packed in sanitary cans such as those purchased under the
contract, to be delivered in the future, at a stipulated sum, and
that owing to the default of the plaintiff in complying with
the terms of their contract aforesaid, the Wright Canning
Company was unable to comply with the contract so made by
it with goods packed by them in such sanitary cans, and was
thus forced upon the market and required to purchase the
goods of the character sold, with which to fill such contracts,
at a sum far in excess of the price at which they had sold,
and greatly in excess of the cost to them of packing such
goods if the contract had been complied with on the part of
the plaintiff, and they had been able to pack the same.

The Court refused to admit this and other evidence tend-
ing to show that the Wright Canning Company had sustained
loss or damage by the failure of the plaintiff to comply with
the terms of the aforesaid contract of May 4th, 1906, and
would not permit the defendants to develop this line of de-
fense, but confined them, as we have said, to the proof of
such loss as was sustained by them as principals.

The Court in so ruling committed an error, and because of
such error the judgment below will be reversed, and a new
trial awarded, and, therefore, as the case is to be again tried,
we will state the well established rule of law applicable to
cases of this character.

In *Winslow Elevator Co.* v. *Hoffman,* 107 Md. 621, JUDGE
BURKE, speaking for the Court and quoting from the case of
*Hadley* v. *Baxendale,* 9 Exch. 341, said: "When two parties
have made a contract which one of them has broken, the
damages which the other party ought to receive in respect of
such breach of contract should be such as may fairly and rea-
sonably be considered either arising naturally, *i. e.,* accord-
ing to the usual course of things, from such breach of con-
tract itself, or, such as may reasonably be supposed to *have*

*been in the contemplation of both parties* at the time they made the contract, as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made, *were communicated* by the plaintiff to the defendant, and thus known to both parties, the damage resulting from the breach of such contract which they would reasonably contemplate would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated. But, on the other hand, if these special circumstances were wholly known to the party breaking the contract, he, at the most, could only be supposed to have had in his contemplation the amount of injury which would arise generally, and in the great multitude of cases not affected by any special circumstances, for such a breach of contract. For had the special circumstances been known, the parties might have specially provided for the breach of contract by special terms as to the damages in that case, and of this advantage it would be very unjust to deprive them." *Webster* v. *Woolford,* 81 Md. 329; *U. S. Telegraph Co.* v. *Gildersleve, supra.*

As to profits, and when the loss of same may be recovered as damages, this Court said in *Lanahan* v. *Heaver,* 79 Md. 418, speaking through JUDGE MCSHERRY that "in actions *ex contractu* it may be said that wherever it is reasonably certain or apparent that profits would have been realized had the contract been completed according to its terms, and the profits of the bargain are the only things purchased or contracted for, and are the direct and immediate proof of the contract, there, though the *amount* of the profits be open to dispute or controversy, still, such profits as the evidence shows would have resulted but for the breach of the contract by the defendant, are a legitimate element of damages; but whenever it is purely problematical whether any profits would have been realized at all by reason of contingences which might never happen or where the profits have reference to dependent and collateral engagements entered into on the faith of the performance of the principal contract, there,

without regard to any uncertainty as to mere *amounts* probable profits cannot be recovered because too speculative, indefinite, and remote."

The defendants' first and second prayers, we think, were properly refused for the reasons already stated in holding that the ruling of the Court was correct in the admission of the certificate of the Secretary of State, and we find no error in the ruling of the Court in the granting of the defendant's seventh prayer as modified, but inasmuch as the granted prayer of the plaintiff and the other rejected prayers of the defendant as well as the prayer granted at the instance of the Court, were all granted upon the facts of the case then before the Court, not including the facts we say should have been admitted, it can serve no useful purpose in the retrial of this case to further pass upon the rulings of the Court thereon, and in view of what we have said as to the defendant's right to recoup for losses sustained by the Wright Canning Company, as their principal, by reason of the breach of the contract aforesaid, we deem it unnecessary to pass upon the exceptions to the testimony, except as to the seventh. This exception was to the action of the Court in refusing to admit in evidence a contract for the sale of tomatoes made by the defendants, March 20th, 1906. This, we think, was properly excluded, as it does not sufficiently appear from the record that the subsequent contract of May 4th, 1906, was executed to enable the defendants to comply with this contract and that knowledge of such purpose was imputable to the plaintiff.

The judgment of the Court below will be reversed.

*Judgment reversed and new trial awarded, with costs to the appellants.*