## JOHN B. WOLF vs. DORA BAUERFIS.

*Husband and Wife—Actions for Personal injuries to Wife—Joinder of Husband—Section 7 of Article 45 of the Code—Right of Wife to sue Alone—Amendment of Declaration—Statute of Limitations.*

At common law, for an injury to the person of the wife during coverture, by battery, slander, &c., the wife cannot sue alone, but the husband and wife must join; and in such case the declaration must conclude to their damage, and not to that of the husband alone.

A married woman cannot sue alone for an assault and battery of her person, under section 7 of Article 45 of the Code, which provides in its final clause that she "may sue in any Court of law or equity in this State, upon any cause of action, in her own name, and without the necessity of a *prochein ami*, as if she were *féme sole*," such clause only giving her the right to sue upon any cause of action arising from or growing out of "the business, occupation, or enterprise" in which she is allowed to engage, or in respect to the money or other property that she may earn or invest, under the statute.

Where a husband has permanently deserted and abandoned his wife, has ceased to render her any support, and has abjured the State, she may maintain an action in her own name for an assault upon her person.

If at the time of the commencement of an action the Statute of Limitations does not form a bar, a subsequent amendment of the declaration will not extend the running of the Statute to the time of amendment.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., ROBINSON, FOWLER, MCSHERRY, and BRISCOE, J.

Wolf *vs.* Bauereis.

*Frederick C. Cook,* and *Charles W. Heuisler,* for the appellant.

*William S. Bryan, Jr.,* for the appellee.

ALVEY, C. J., delivered the opinion of the Court.

The plaintiff in this case is a married woman, and the action is for an assault and battery of her person, with the charge of an outrageous forcible attempt on the part of the defendant to have carnal connection with her. The action was originally instituted in the joint name of husband and wife, but by an amendment of the declaration the name of the husband was omitted, and the suit was thence conducted in the name of the wife alone. The defendant pleaded in abatement of the amended declaration the coverture of the plaintiff, to which plea the plaintiff demurred, and the demurrer was overruled. The plaintiff then replied to the plea of coverture, and alleged "that at the time the wrongs and injuries complained of were committed, her husband had *permanently* and voluntarily, and without her knowledge or consent, *deserted and abandoned* her, and ceased to render her any maintenance or support, and had *abjured* the State of Maryland, and had *ceased to reside therein,* without any fault on the part of the plaintiff." To this replication the defendant demurred, but the demurrer was overruled.

The defendant then pleaded two pleas. First. That he did not commit the wrongs alleged; and second, That the cause of action sued on did not accrue within one year next prior to the filing of the amended declaration. To the second plea the plaintiff demurred, and the demurrer was sustained. The case was then tried on the issue made by the first plea, and the verdict and judgment being against the defendant he has appealed. And the questions presented by the record are those only which are raised by the demurrers to the pleadings.

Wolf *vs.* Bauereis.

There are three questions presented. 1st. Whether a married woman, for a cause of action such as that declared on in this case, can maintain a suit in her own name, under the provision of the Code, as if she were *féme sole?* 2nd. If she cannot maintain the action in her own name, by virtue of the provision of the statute, whether the replication to the plea of coverture furnished a sufficient answer to that plea? and 3rd. Whether the plea of the Statute of Limitations, in the form pleaded, constituted a bar to the action?

1. With respect to the first question, that depends upon the proper construction of section 7 of Article 45 of the Code. Of course, it is a familiar principle of the common law, that for any injury to the person of the wife during coverture, by battery, slander, &c., the wife cannot sue alone, but the husband and wife *must* join; and in such case, the declaration must conclude to *their* damage, and not to that of the husband alone; for the damage will survive to the wife if the husband die before they are recovered, and so if the wife die after judgment, the judgment survives to the husband. 1 *Chitt. Pl.*, 82; *Stroop vs. Swarts*, 12 *Sergt. & R.*, 76. But it is insisted by the plaintiff that this principle of the common law has been changed by the section of the Code to which we have referred. The Court below, in overruling the demurrer to the plea of coverture, held otherwise, and in so holding we think the Court was clearly right. The question, however, was again raised, by the subsequent demurrers ruled upon by the Court.

Section 7, of Art. 45 of the Code, had its origin in the Act of 1842, ch. 293, entitled "An Act to regulate conjugal rights as they regard property." The Act was an enabling statute, conferring upon a married woman the right to acquire property in certain ways, and to hold the same exempt from the debts of her husband; and by the 8th section of the Act, a married woman was author-

ized, by her own skill, industry or personal labor, to earn money, or other property, to the value of $1000 or less, and to hold the same to her own use; with a proviso, that such money or property should be liable for debts contracted by any such married woman, to be collected by attachment. This 8th section of the Act of 1842 was embodied in the Code of 1860, Art. 45, as section 7; and which section was, by the Act of 1882, ch. 265, repealed and re-enacted so as to be made to read as we now find it in section 7 of Art. 45 of the present Code. The modifications introduced by the Act of 1882 were, first, to dispense with the limit to the amount of the earnings of the wife; second, to confine the liability of such earnings to debts contracted "in and about the business, occupation or enterprise in which said money or other property shall be earned or invested;" third, that for any such debts a married woman may be sued as if she were a *féme sole;* and fourth, that any such property so acquired may be taken in execution to satisfy any judgment rendered on such cause of action, &c. And at the end of the section, without other break or stop in the context than a mere semicolon, it is added,—"and provided further, that any married woman may sue in any Court of law or equity in this State, *upon any cause of action* in her own name, and without the necessity of a *prochein ami,* as if she were *féme sole."*

This general language, "upon any cause of action," if read dissociated from the context and general purview of the section, would certainly furnish strong color for the contention of the plaintiff, that a married woman is now placed upon the same footing of a *féme sole,* in respect to all causes of action whatever in which she may have an interest. But that construction is certainly too broad. If such construction were adopted the wife might maintain actions against her husband on contracts, or for wrongs to her person or property. It

Wolf *vs.* Bauereis.

is not to be supposed that such a radical change was intended by the Legislature. Moreover, if such general, unqualified right of maintaining actions, as if she were a *féme sole*, had been intended to be conferred upon the wife, we can hardly suppose that the codifier or the Legislature would have deemed it necessary to retain, as part of Article 45, the section 4 of that Article, which provides that if a married woman has no trustee, she may, by her next friend, sue in any Court of law or equity *in all cases* for the recovery, or security, or protection of her property, as fully as if she were a *féme sole*. The general language in the proviso of the section under consideration must be taken and read in connection with the preceding part of the section. It was intended, manifestly, to supply what had been omitted from the Act of 1842, and the Code of 1860; that is to say, the giving to a married woman a right to maintain an action in her own name, to a corresponding extent that she was made liable to suit, upon any cause of action arising from or growing out of "the business, occupation or enterprise," in which she is allowed to engage, or in respect to the money or other property that she may earn or invest, under the statute. The ability to maintain such action was essential to the complete protection and security of the rights that she might acquire by her skill and industry; and to confer upon her that power was the object, doubtless, of the proviso incorporated in the section by the re-enactment of 1882. It is said that the function of a proviso is that of limiting and qualifying the language of the statute, and not that of enlarging or extending the Act or section of which it is a part; and that a proviso should always be construed with reference to the immediately preceding parts of the clause or section to which it is attached. *In Re Webb*, 24 *How. Pr.*, 247; *Comm'rs of Kensington vs. Keith*, 2 *Penn. St.*, 218; *Ex parte Partington*, 6 *Q. B.*,

649, 653; *Endlich on Interp. of Sts.*, sec. 186. And so construing the proviso in the section of the Code before us, we cannot resist the conclusion that the plaintiff is not, in this case, entitled to maintain the action in her own name alone, by virtue of the provision of the statute relied on.

2. The next question is, whether the replication to the plea of coverture, alleging desertion and abandonment of the wife by the husband, afforded a sufficient answer to the plea, and alleged facts sufficiently to entitle the plaintiff to maintain the action without the joinder of her husband.

It is objected that the replication is defective in the manner of alleging the facts; that it fails to allege the continued absence and desertion of the husband at the time of trial. And it must be conceded that the replication does not, in this respect, conform to good precedent. *Bogget vs. Frier*, 11 *East*, 302. But still, by fair construction and reasonable intendment, we think the facts are sufficiently alleged to raise the issue of the continued and permanent desertion of the wife by the husband, at the time of action brought and trial had. It is alleged that the husband had *permanently* deserted and abandoned the wife, and had *ceased* to render her any support, and that he had *abjured* the State and *ceased to reside therein*, at the time of the commission of the wrongs alleged. Now, it is a little difficult to see how, if the husband had permanently abandoned the wife, and had abjured the State and ceased to reside therein, he could, by any reasonable construction, be supposed to have returned to the State and to his marital relation before and at the time of the replication filed. To indulge such supposition would be inconsistent with the clear import of the terms employed in the replication.

Wolf *vs.* Bauereis.

Then, the question is, whether the facts alleged constitute an answer to the plea in abatement of the coverture of the plaintiff?

For a long period back the harsh and severe rules of the old common law, in respect to the relation of husband and wife, and the absolute control of the former over the mere personal rights and property of the latter, have been undergoing modifications, both by positive legislation, and the exigences and necessities of modern society. Hence, in modern times, there are many conditions of things that will devolve on the wife the rights and liabilities of a *féme sole*, which, in the earlier periods of the law, would have had no such effect. At this day, if the husband deserts the wife and leaves the State, without intention of return, and thus, in a *de facto* way, rids himself of his marital duties, the wife, from the necessity and humanity of the case, must have the power of supporting and protecting herself, and therefore must have the right to contract and enforce her contracts, and, above all, to invoke the remedies given by the law for the redress of personal wrongs; and this without any reference to what may be claimed to be or set up as the rights of the delinquent husband. For, as said by the Supreme Court of Pennsylvania in *Starrett vs. Wynn*, 17 *Sergt. & R.*, 130, "unless some positive rule of law intervenes, policy and humanity would require, that, as he has cut himself loose from the duties, which the relation of marriage imposes, he shall not be allowed its advantages. His conduct would amount to a virtual surrender of his rights."

In 1842, the Supreme Court of Massachusetts, in the case of *Gregory vs. Pierce*, 4 *Metc.*, 478, had presented to it the question, under what circumstances a married woman could be recognized as a *féme sole*, with the right to sue and be sued in her own name, in the Courts of that State; and the Court, in disposing of the question, said: "The

Wolf *vs.* Bauereis.

principle is now to be considered as established in this State, as a necessary exception to the rule of the common law, placing a married woman under disability to contract, or maintain a suit, that where the husband was never within the State, or has gone beyond its jurisdiction, has wholly renounced his marital rights and duties, and deserted his wife, she may make and take contracts, and sue and be sued, in her own name, as a *fême sole.*" In this statement of the law we entirely concur, upon principles of reason and justice. And if the exception to the rule of the common law, in respect to the contracts, and actions thereon, by a deserted wife, be allowable, *a fortiori*, actions for personal wrongs to such wife ought to be allowed to be maintained by her, without reference to her husband. We are therefore of opinion that the replication of the plaintiff furnished a good answer to the plea of coverture, pleaded in abatement by the defendant; and that there was no error in overruling the demurrer to the replication.

3. The remaining question is that in regard to the plea of the Statute of Limitations pleaded to the amended declaration. We are clearly of opinion that the Court committed no error in holding the plea insufficient. The amended declaration was founded upon no new cause of action; and the Statute only ran to the commencement of the suit. At the time of the commencement of the action the Statute had not formed a bar, and the subsequent amendment of the declaration did not extend the running of the Statute to the time of amendment.

It follows that the judgment must be affirmed.

*Judgment affirmed.*

(Decided 19th June, 1890.)