# ALBINUS SCHUCK

## vs.

# M. ROLAND BRAMBLE.

*Banks: liability for wrongful conversion by teller; not for wrongs done in private capacity. Declaration: amendment; new suit in effect; limitations; dates included in calculation; suspension of statute, where cause of action concealed by fraud; Code, Article 57, section 14.*

A bank is liable to a depositor for the wrongful conversion of his money by a receiving teller, while acting in that capacity.
                                                                p. 413

But for such a conversion, while acting independently of his employment by the bank, the bank is not liable, although at the time the wrongdoer was also in the bank's employ.        p. 413

When a declaration is amended by adding new counts, which in effect amount to a new cause of action, the effect is that of a new suit.                                                    p. 414

In such a case to determine the validity of a plea of limitations, the day of the filing of the amended declaration is to be taken as the date which arrests the running of the statute, and not the date of the filing of the original declaration.  pp. 414-415

Under section 14 of Article 57 of the Code, where a right of action has been concealed through the fraud, etc., of the other party, the right to bring suit is deemed to have first

accrued at the time at which the fraud shall, or with usual and ordinary diligence might, have been known or discovered.

p. 414

The fraud which suspends the running of the statute according to the provisions of that Act, may be either actual concealment of facts, or it may be fraud of such a character as to conceal itself, whereby the plaintiff remains in ignorance without any lack of diligence on his part; and it is not necessary, to constitute such fraud, that there shall be any special effort on the part of the defendant in the way of concealment.　　pp. 414-415

*Decided January 15th, 1914.*

Appeal from the Baltimore City Court. (HARLAN, C. J.)·

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*W. Conwell Smith* and *J. Royal Tippett,* for the appellant.

*Robert F. Stanton* and *William S. Bryan, Jr.,* for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

This suit was instituted by the plaintiff on November 8th, 1909. The declaration contained seven counts, the first six being the common counts in assumpsit, and the seventh a special count, charging "that the defendant, while the receiving teller of the Canton National Bank, handled large sums of money and negotiable paper belonging to the plaintiff, and while in such capacity as receiving teller of the Canton National Bank he did at various times wrongfully convert to his own use large sums of money belonging to the plaintiff,

aggregating in the total the sum of $40,000," that the plaintiff had made a demand for the money, and been refused. A demurrer having been filed to this declaration, the plaintiff amended by striking out the first six counts, and still later, on December 30th, 1912, under leave of Court, again amended his declaration by adding five additional counts. These counts, so added, allege in varying form the conversion of the money and negotiable paper by the defendant, or its conversion by the defendant while in the capacity of an employee of the plaintiff. No suggestion is contained in any of them that the alleged tortious acts were in any manner connected with the employment of the defendant by the Canton National Bank. The conversion, if there was any, if made while acting in the defendant's capacity as receiving teller, was one for which the bank itself would be responsible, while if made by the defendant independently of his employment by the bank, would result in no liability on the part of the bank, even though the defendant was at the time in the bank's employ. This was, therefore, setting up in the five counts added in December, 1912, a new theory of liability from that on which the first count had proceeded, and was in effect a new suit.

To the second amended declaration the defendant filed three pleas; the first, *non cul;* the second, that the cause of action did not accrue within three years before suit brought, that is, the plea of limitations; and the third, that the cause of action did not accrue within three years before the filing of the second amended declaration. Upon a motion of *ne recipiatur,* the third plea was rejected as a plea to the first count of the declaration, but the motion was overruled as to the other counts. These pleas were duly traversed and issue was joined on the replication, and thereafter the plaintiff filed an amended replication as to the third plea, to the effect that the bar of the statute of limitations could not be invoked, because the plaintiff had been kept in ignorance by the fraud of the defendant, thus bringing the action within the provisions of Article 57, section 14 of the Code (1912). which

provides that, "In all actions where a party has a cause of action of which he has been kept in ignorance by the fraud of the adverse party, the right to bring suit shall be deemed to have first accrued at the time at which such fraud shall, or with usual and ordinary diligence might have been known or discovered." The only question which this record presents for determination is whether or not the statute of limitations can be invoked as a bar to the action, and is raised by the rulings of the Court granted at the conclusion of the plaintiff's evidence, withdrawing the case from the consideration of the jury, and directing the verdict for the defendant upon these grounds.

It has already been pointed out that the last five counts of the second amended declaration introduce an entirely new element into the case from what was contained in the original declaration, and therefore, under the rules as laid down in *Schulze* v. *Fox,* 53 Md. 37; *Di Giorgio Co.* v. *Stock,* 116 Md. 201, and *Hamilton* v. *Thirston,* 94 Md. 256, the cause of action set out in the last five counts must have originated subsequent to the 30th December, 1909, or if originating before, have been kept from the knowledge of the plaintiff by the fraud of the defendant, or have been of such a character as not to be discoverable as the result of usual and ordinary diligence on the part of the plaintiff. The effect of the section of the Code already quoted has been frequently passed upon by this Court, beginning with the leading case of *Wear* v. *Skinner,* 46 Md. 264. In many States a question has arisen as to the time when the Statute of Limitations should be treated as beginning to run; in some it is held to begin to run from the date when the conversion is alleged to have taken place; in others from the time when an actual knowledge is shown to have come to the party alleging the conversion; but in this State by the language of the statute the right of action accrues at the time at which the fraud "shall or with usual and ordinary diligence might have been known or discovered." That fraud may be either an actual concealment of facts, or the fraud may be of such a character as to conceal itself,

whereby the plaintiff remains in ignorance without any lack of diligence on his part, and it is not necessary to constitute such fraud, that there shall be any special effort on the part of the defendant in the way of concealment. This being the condition of the law it becomes necessary to examine the facts in the case as testified to, to determine the applicability *vel non* of the section of the statute referred to.

Albinus Schuck began dealing with the Canton National Bank in 1893, and from that time on for ten years continued to deal with it, during all, or the portion, of which time, the defendant, Mr. Bramble, was in the employ of the bank in the capacity of receiving teller. In March, 1903, without closing the account of Albinus Schuck, a second account was opened in the Canton National Bank by Mr. Schuck, under the title of "Schuck & Co.," that being the name of a partnership composed of Mr. Schuck and his son-in-law, Mr. Plant. This account continued up until in June, 1906, when it was finally closed. During the time that these two accounts were running, there was a third account, entitled the "Flint Co.," of which Mr. Schuck was the chief official. When the accounts thus multiplied, the plaintiff employed the defendant for the purpose of keeping the accounts, as the plaintiff testified, of Schuck & Co. and of the Flint Company. The bank books of the plaintiff were in his own custody, while that of Schuck & Co. was in the custody of the defendant. Transactions were numerous, consisting of deposits, checks, discounts and renewals of notes, the entries of which were sometimes carried to one account, and sometimes to another, with probably some errors as to the accounts to which different transactions were charged, or to which proper credits were given, and much confusion crept into the accounts, tending to becloud the real condition of each and all of them.

Mr. Schuck testified that in June of 1905, Schuck & Co.'s affairs were wound up, and that at that time he received all the checks and notes that had been charged to Schuck & Co.'s account; this date was probably an error, as by the agreement of counsel it appears that the account of Schuck

& Co. was finally balanced on June 25th, 1906. The individual account of Albinus Schuck was balanced thirteen times between February 27th, 1902, and June 25th, 1906; the last balance being of the same date as the final balance of the account of Schuck & Co. At some time during that year the Canton National Bank notified the plaintiff that he was indebted to them to the extent of $29,000, and he referred the matter to his then attorneys, who took the claim up with the cashier of the bank, with the result that in December, 1906, the plaintiff gave the Canton Bank a mortgage on all his property to secure it for this alleged indebtedness of $29,000, coupled with an agreement to refund to the plaintiff such sums, if any, as might be claimed by it in error. This alleged indebtedness of Mr. Schuck to the bank is the basis of the plaintiff's present claim of the conversion by Bramble of the money of the plaintiff. It will be recalled that the 25th June, 1906, was the date of a balancing of both the account of Schuck & Co. and of Albinus Schuck. To support the idea that the fraud of the defendant was of such a character as to conceal itself, the plaintiff testified that it was impossible for him to check up the one account without the other; but on June 25th, 1906, he had both accounts and the checks and notes appearing in them, and was, therefore, in a position, according to his own testimony, to check them up. That he attempted to do so also clearly appears, for he says that he tried to do it, but found it was so difficult that he got William Rodgers, a certified accountant, to go over the accounts for the purpose of verification, and that this "was along in the early part of 1906," and a little later, he testified, that at the time of his own examination made prior to that of Rodgers', he suspected that there were notes charged against the account which had not been credited in the pass book. Mr. Rodgers' examination extended at least two weeks, but was completed sometime in the summer of 1906. A large proportion of the entries in the pass books were in the handwriting of the defendant, and known to the plaintiff to be in his handwrit-

ing, and in view of this testimony and particularly the employment by the plaintiff of a certified accountant to make an expert examination of the accounts, because of the suspicion that he had not been given proper credits upon one or the other of the accounts, it is impossible that his statement, that he began to have suspicions for the first time when the mortgage was signed in December, 1906, can be other than a lapse of memory.

The original suit, it will be recalled, was instituted in November, 1909, more than three years after the time not merely when the plaintiff had begun to suspect that there was something wrong in his accounts, but more than three years after the examination of the certified accountant, selected by him to ascertain the inaccuracy, errors or fraud, if any, had been completed and was in his hands, and more than six years before the filing of the second amended declaration.

In such a condition it is impossible to see how it can be claimed that the alleged fraud could not have been discovered by the exercise of ordinary and usual diligence until such a date as to remove the bar of the Statute of limitations, and the trial court committed no error in granting the prayer of the defendant directing a verdict in his favor.

No opinion is expressed as to the merits of the case, for the reason that whatever may be the view of this Court in that regard, if the plea of limitations was one which could be successfully invoked, it must necessarily operate to dispose of the case, wholly apart from every other consideration.

*Judgment affirmed, with costs.*