WILLIAM WEIL, ET AL. *v.* EDWARD LAMBERT

[No. 7, April Term, 1944.]

234

*Decided May 3, 1944.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, and BAILEY, JJ.

*V. Calvin Trice*, with whom was *W. Brewster Deen* on the brief, for the appellants.

*G. Elbert Marshall*, with whom was *Wesley E. Thawley* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

Edward Lambert, appellee here, entered suit on November 10, 1942, in the Circuit Court for Talbot County against William Weil, Emil Rothschild, ancillary administrators of the Estate of Meyer Gutman, deceased, appellants here. The declaration contained the six common counts and a special count which was amended to read substantially as follows: "* * * Meyer Gutman in his lifetime owned and possessed a building in the town of Easton, Talbot County, Maryland, * * * known as Talbot Building, and the said Meyer Gutman delivered or placed said building in the care, custody and charge of said plaintiff and authorized the plaintiff to take charge of said building and of the renting of the apartments, offices, and store or store rooms in said building, which employment by said Gutman of the plaintiff and of the plaintiff's services in connection therewith as authorized by said Gutman continued from the year 1929 to the date of the death of said Meyer Gutman, on or about December, 1941, and that pursuant to the authority of said Gutman the plaintiff did from time to time procure tenants for the several apartments, offices, store rooms

and shops of said Talbot Building and collected or procured the payment to said Meyer Gutman of the rentals due therefor, which were received by the said Meyer Gutman, and the said Meyer Gutman for the plaintiff's services to be rendered as aforesaid, for the care of said building, the renting thereof and the collecting of rentals or procuring the payment thereof orally promised and agreed to pay unto the plaintiff ten per centum of all the rentals so collected or procured to be paid for said building and received by said Gutman, but said Gutman has failed to pay to the plaintiff the amount of said commissions at ten percentum due from said Gutman to the plaintiff as aforesaid, for his services, except as to the sum of Two hundred forty-five dollars being a credit applied for rental due from the plaintiff to said Gutman prior to the making of the aforementioned agency agreement, and there is due unto the plaintiff for his services rendered to, and for account of said Meyer Gutman, as aforesaid, the balance of Thrty-nine hundred thirty-three dollars, together with the additional sum of Thirty dollars due for screens and curtains which upon authority of said Gutman were purchased by the plaintiff out of his own funds in the course of the plaintiff's employment in the care and rental of said building, and which said amount of Thirty dollars said Gutman has failed to pay unto the Plaintiff, making an aggregate balance of Thirty-nine Hundred Sixty-three dollars due from said Gutman Estate, and the defendants herein, unto the plaintiff, as above set forth." With the declaration was filed a bill of particulars. The defendants excepted to the bill of particulars as filed and demanded that it be more complete. As a result of that demand, the following amended bill of particulars was filed to each one of the several counts in the declaration:

"To services rendered in the lifetime of said Meyer Gutman by Edward Lambert as the agent thereunto authorized by said Gutman, in charge of, and for renting, the building called and known as Talbot Building * * * in Easton, Talbot County, Maryland, and attending to

payment of rental for the several stores, offices, apartments, &c., in said building, and including services authorized by said Gutman to be rendered by said Lambert, as his agent, in the care, maintenance and over-sight of said building and premises at the orally agreed compensation of 10% to be paid by the said Meyer Gutman to Edward Lambert of all rents received by said Gutman for said building for the period from the year 1929 to the death of said Meyer Gutman or on about December, 1941:

"To 10% of $41,780.00 rentals paid for said building to said Gutman subject to the aforementioned agency agreement for compensation to said Lambert for his services...........$4,178.00

"To money advanced and paid by Edward Lambert for account of Meyer Gutman as authorized in furnishing screens and curtains for said Talbot Building

15 screens @ 75c each..............$11.25

15 curtains @ $1.25 each........... 18.75    30.00

"By credit amount due from Edward Lambert to Meyer Gutman for rental prior to said agency agreement ......................    245.00

"Balance due from Estate of Meyer Gutman, deceased, to Edward Lambert...........$3,963.00"

The appellants then pleaded the general issue pleas and the statute of limitations. To the plea of limitations the appellee replied new promise upon which issue was joined. Issue was also joined on the general issue pleas. The case, removed to Caroline County, was tried before a jury. The testimony in general shows that previous to the year 1929 the appellee, a retired government postal clerk and an insurance agent, rented an office from Meyer Gutman in the Talbot Building in Easton, Maryland, and from 1929 to 1941 he had been occupying an office in the building, looking after that building, arranging for repairs, renting the stores and apartments and collecting the rents which he forwarded to Mr. Gutman who was away from Easton during most of that time. There is

offered in evidence correspondence between Messrs. Lambert and Gutman concerning the collection of rents, repairs to the building, and general matters concerning rentals of stores and apartments. This correspondence continued from 1929 to 1940. The appellee served a notice on appellants to produce records as to rentals received by the deceased from the Talbot Building from 1929 to the date of death in 1941, and also all letters and correspondence between the deceased and the appellee. These were not produced.

J. Russell Summers, a contractor and builder and a witness produced by the appellee, testified that he did work on the Talbot Building making it into apartments and doing general repair work, and that Mr. Gutman would visit Mr. Lambert's office. He said that while he was doing some repair work on the building, he had the following conversation with Mr. Gutman, who said: " 'If Mr. Lambert calls you up and wants anything done, you do it and I will pay you.' He said Mr. Lambert was taking care of the building there, and 'He's looking after the rent and the building, and I am giving him the office here and giving him ten per cent. for the collecting of the rents and the offices and the store, but,' he said, 'I think that's pretty stiff, don't you, Russell?' I said, 'Mr. Gutman, I don't know. That's out of my line, but if you would ask some of the real estate men around here, the people that rent places, they will tell you. I really don't know, Mr. Gutman, whether it's too high or whether it's in line or not. I can't say. It's out of my line'."

Earl M. Townsend testified that he formerly occupied an apartment in the Talbot Building opposite the office of the plaintiff, that he always paid the rent to Mr. Lambert and that Lambert would turn the rent over to Mr. Gutman. He said that in August, 1940, while in Mr. Lambert's office, he heard a conversation between Gutman and Lambert. He further said:

"A. Well, when I walked in they were talking. What they were talking about I don't know. It must have been evidently to rents, and I heard him say, he said 'Lambert

you get too hot-headed', and it was something pertaining to the commissions he owed him. * * *

"Q. Did you hear any conversation in which an amount of money was stated, and what either one of them said about it? A. Yes, it was around $3,000.00 Mr. Lambert said.

"Q. What, if anything, did Mr. Gutman say about Mr. Lambert's statement that it was around $3,000.00? A. He said 'That's right', and then he said, 'That will be paid in due course. Don't get worried over it.' "

Charles Pritchard, the janitor of the Talbot Building, testified that Mr. Lambert paid him for the janitor work and at one time he heard the following conversation between Lambert and Gutman: "Q. Who said he wanted a settlement? A. Mr. Lambert told Mr. Gutman, and he would get all, not to worry, and he said, 'We will straighten that thing up, we will tend to that thing later'. He said, 'Don't get worried. I will straighten that up.' Well, the man, naturally I was listening to him."

The defendant offered no testimony. The case being submitted to the jury, a verdict in the amount of $2,481 was rendered for the appellee. From the judgment on that verdict the appellants appeal to this Court. The case comes here on an exception to the ruling of the trial court in refusing the six prayers of the defendants and on an exception to the instruction given by the trial court to the jury.

We will first consider together the rejected first, fifth and sixth prayers and the exception to the court's instruction to the jury as all the questions raised in these rulings relate primarily to the sufficiency of the evidence offered by plaintiff to recover under the pleadings in the case. The rejected first prayer was a demurrer prayer. In the rejected fifth prayer the defendants asked the court to instruct the jury "that the burden of proof is upon the plaintiff to prove by a preponderance of evidence the contract or agreement alleged in the declaration, and if their mind is in a state of equipoise or even balance, then the verdict shall be for the defendants." The rejected sixth

prayer asked the court to instruct the jury "that there is no evidence in this case legally sufficient to show upon what sum or sums of money the plaintiff is entitled to ten per cent." The part of the instruction to the jury to which the defendants excepted follows: "The Court instructs the jury that if they shall find from the evidence that the plaintiff rendered the services referred to in the declaration and bill of particulars to and for the benefit of the late Meyer Gutman, during his lifetime, at his request, and shall further find from the evidence that the said Meyer Gutman, in consideration of said services, promised to compensate the plaintiff for said services, and did not perform said promise, then the Jury shall find for the plaintiff against the defendants for the value of said services, the agreed compensation, if they find any agreement on this point, or what the said services were worth if they find no expressed contract of compensation * * *." Appellants contend that the amended bill of particulars, filed to each one of the several counts in the declaration, limits plaintiff's recovery to the special contract, and there can be no recovery under any of the other counts in the declaration. The office of a bill of particulars is to extend to and inform the other party what is claimed under each count in the declaration. *Carter v. Tuck*, 3 Gill 248, 250. As a general rule, a bill of particulars, unless restricted to some particular count, applies to all the counts of a declaration if they be of a character to require such aid, in order to notify the defendant of the nature and extent of the plaintiff's claim. *Black v. Woodrow*, 39 Md. 194, 212. "The office and legal effect of a bill of particulars is to inform the opposite party of the precise nature and extent of the claim which the plaintiff intends to rely upon under each and every count of the narr., and to confine his evidence to the claim thus stated. *Carter v. Tuck*, 3 Gill [248] 250; *Hall v. Sewall*, 9 Gill 147; *School Commissioners v. Adams*, 43 Md. [349] 356." *Cairnes v. Pelton*, 103 Md. 40, 44, 63 A. 105, 107; *Owings v. Dayhoff*, 159 Md. 403, 408, 151 A. 240. When the bill of particulars is filed in answer to a demand it is consid-

ered as embodied in and forming part of the declaration. The effect then of the bill of particulars is to show the entire cause of action under all the counts of the declaration, and the plaintiff will be undoubtedly precluded from giving any evidence of any other demand or claim. *Scott v. Leary,* 34 Md. 389, 400; *Noel Cons. Co. v. Armored Con. Co.,* 120 Md. 237, 251, 87 A. 1049. It is also unquestionably true that when a party declares upon a special agreement and proves a contract variant from the one on which he does declare, he cannot recover on the special contract, on account of the variance, nor can he recover on a *quantum meruit* because there was a special contract; but if he declares upon a special contract and fails to prove it but proves an agreement, and the work done according to the terms of it, he can recover under the common counts if nothing remained to be done but the payment of the money by the defendant. When the alleged contract is a verbal one, as the one before us now, he may be able to prove that he was employed and had performed the services, and the rate of compensation agreed upon, but may fail to show that all the compensation alleged was owing. *Speake v. Sheppard,* 6 Har. & J. 81, 84, 85; *Fairfax Forrest Co. v. Chambers,* 75 Md. 604, 23 A. 1024; *Gill v. Donovan,* 96 Md. 518, 528, 54 A. 117; *Conservation Co. v. Stimpson,* 136 Md. 314, 317, 318, 110 A. 495. It is, of course, true that recovery is limited to the services alleged in the bill of particulars and recovery cannot be had for other and different services. This Court said in the case of *Gill v. Donovan,* supra, 96 Md. at page 528, 54 A. at age 120, in reference to Judge Robinson's opinion in the case of *Fairfax Forrest Co. v. Chambers,* supra: "Again, in dealing with a prayer in that case which had been rejected, and which asserted the proposition that, to entitle the plaintiff to recover, he had to prove the contract set out in the bill of particulars, the court further said, after criticising the prayer in other particulars, 'we are not to be understood as meaning that the right of the plaintiff to recover in an action of assumpsit depended upon his being able to prove the

agreement under which his services were rendered. On the contrary, if services were actually rendered by him and accepted by the defendant, he was entitled to recover compensation for such services, independent altogether of the special agreement.' Then, after speaking of the office and effect of the bill of particulars, and saying that the plaintiff could not 'recover for other and different services, nor could he offer evidence of any other claim or demand,' the court further said: 'But the bill of particulars did not prevent the plaintiff from recovering under the common counts, if the special contract was executed, or, in other words, if the services under it had been fully rendered, and nothing remained to be done but the payment of the money by the defendant.' "

In the case now before this Court there is evidence that the plaintiff rendered the services alleged in the contract. The witness, Russell Summers, testified that Mr. Gutman told him that he had agreed to pay Mr. Lambert ten per cent. of the rents collected. The witness, Earl M. Townsend, testified that he heard a conversation between the parties in August, 1940, pertaining to the commissions that Gutman owed Lambert and that Mr. Gutman admitted that it was around $3,000 and that it would be paid. There is evidence that the alleged contract was made and that the services were performed. It is true that he could not show that he had collected as much as $41,780 in rentals. However, there is evidence that in August, 1940, a promise was made to pay commissions in the amount of $3,000 which, based on the alleged agreement, was ten per cent. commission on rent collected in the amount of $30,000. There is no evidence of any other or different services. Appellants stress the fact that there is no evidence to show that this money was owed in December, 1941, at the time of decedent's death. By Code, Article 35, Section 3, plaintiff was, of course, incompetent to testify. There is evidence that the money was due and owing in August, 1940. The defendants, administrators of a nonresident decedent, were served with notice to produce certain books and papers, especially the

records beginning in 1940 down to the date of Mr. Gutman's death. These books and papers were not produced. Appellants admit that, assuming that the witness, Townsend, proved the contract and the collection of $30,000 in rent, there would have been a presumption that this money was owed, and the burden would have shifted to Gutman. *Hammond's Lessee v. Inloes,* 4 Md. 138, 172; *Burgess v. Lloyd,* 7 Md. 178, 199. The jury evidently concluded that the appellee proved the contract and the collection of $30,000 in rent. While the lapse of time may raise of itself at common law a presumption of payment, the presumption will not arise if the length of time is not at least twenty years unless the circumstances of the particular case are such as to raise a presumption of payment. *Provident Trust Co. v. Massey,* 146 Md. 34, 125 A. 821; *Morse v. National Central Bank,* 150 Md. 142, 147, 132 A. 598; *Lynch v. Rogers,* 177 Md. 478, 486, 10 A. 2d 619; 22 *Am. & Eng. Ency. of Law,* 2d. Ed., 596; *Wigmore on Evidence,* 2d Ed., Sec. 2517. The court does not, of course, consider the weight of the evidence which is a matter exclusively for the jury. It is only concerned with the question of the legal sufficiency of the evidence. *Hartford National Bank v. Rutledge,* 124 Md. 46, 65, 91 A. 790. If there is any evidence, however slight, legally sufficient as tending to prove the matters alleged, that is to say, competent, pertinent and coming from a legal source, the weight and value of such evidence will be left to the jury. *Roycroft v. Nellis,* 171 Md. 136, 141, 188 A. 20; *Miller, etc., v. Loyal Order of Moose,* 179 Md. 530, 535, 20 A. 2d 156. For the reasons hereinbefore given, we see no error in the rejection of the defendants' first, fifth and sixth prayers and the court's instruction to the jury.

The second rejected prayer of the defendants asked the court to instruct the jury "that if they should find for the plaintiff, from the evidence, they shall only find for compensation for such services as they shall find from the evidence the plaintiff rendered the decedent during the three years immediately preceding the bringing of this

suit, if they shall find from the evidence that the plaintiff rendered any such services during said three years, and should they further find from the evidence that the decedent, expressly or impliedly, agreed to pay said compensation." Appellants contend that the statement in the testimony of Russell Summers that Messrs. Lambert and Gutman in 1940 were talking about something pertaining to commissions that Gutman owed Lambert and that Mr. Gutman admitted that it was around $3,000 and it would be paid in due course, was not sufficiently definite to be submitted to the jury to support the replication of a new promise so as to bar the statute of limitations. In the case of *Gill v. Donovan,* supra, where a servant sued an estate for services rendered the decedent during her lifetime, a witness testified that three months before the decedent's death, the decedent told the witness that she had not paid the plaintiff yet but that she would pay her and she intended to give her more than her wages. This Court held that that was sufficient to take the case out of the operation of the statute of limitations. *Stewart v. Garrett & Maus,* 65 Md. 392, 5 A. 324; *Shipley & Wampler, Ex'rs, v. Shilling,* 66 Md. 558, 8 A. 355; *Beeler v. Clarke,* 90 Md. 221, 14 A. 1038. The Court said in that case at page 523 of 96 Md., at page 119 of 54 A.: "The acknowledgement of a subsisting debt, unaccompanied with any sufficient excuse for not paying it, will remove the bar of the statute." *Oliver v. Gray,* 1 Har. & G. 204. The court was correct in refusing this second prayer.

The third prayer, being a variance prayer, is bad in form and does not correctly state the evidence offered or the allegations of the declaration and was properly refused.

The defendants' rejected fourth prayer asked the court to instruct the jury "that if they should find from the evidence that the plaintiff managed the building mentioned in the evidence, secured tenants and collected rents from them for the use of the building during the time from June 1st, 1939, to the death of Gutman in December, 1941, and that during said time the plaintiff did not

have a license to perform the said acts or services, then the plaintiff cannot recover in this case any compensation for such services whether they were performed before June 1st, 1939, or afterwards." The Court was correct in refusing this prayer. Article 56, Sections 343-363, of Flack's Code, 1939, providing for a real estate broker's license would not apply to the alleged work done by the plaintiff for the defendants' decedent. The collection of rent was only one of the many services alleged to have been performed. The other work included responsibility for the building, acting as caretaker and looking after the general upkeep and repair and renting the offices, stores and apartments. This employment of the plaintiff to collect rents from this one building with no intention of engaging in any other transactions with respect to any form of realty or interest therein is not carrying on the business of a real estate broker. *Kolb v. Burkhardt*, 148 Md. 539, 543, 129 A. 670.

As we find no error in the rulings of the trial court, the judgment will be affirmed.

*Judgment affirmed, with costs.*