CLINE *v.* FOUNTAIN ROCK LIME AND BRICK
COMPANY, INC.

[No. 225, October Term, 1956.]

*Decided July 26, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Charles McC. Mathias, Jr.,* and *Stanford Hoff,* with whom was *Charles McC. Mathias* on the brief, for appellant.

*Edward D. Storm* and *Charles O. Fisher,* for appellee.

BRUNE, C. J., delivered the opinion of the Court.

This is the second appeal in this case. For the first appeal, see *Cline v. Fountain Rock Lime and Brick Co., Inc.,* 210 Md. 78, 122 A. 2d 449. The principal question presented on the present appeal is whether or not the amended or substituted declaration filed after the case was remanded constituted a new cause of action, which was barred by limitations when this amended declaration was filed. The Circuit Court for Carroll County held that it was not; and the trial resulted in a verdict and judgment for the plaintiff, Fountain Rock Lime and Brick Co., Inc. ("Fountain Rock"), for $9,125 (as against $7,000 on the first trial) from which the defendant, Cline, appeals.

The case was submitted to the jury on two issues, with instructions to determine and report the amount of damages assessed against Cline, if either of the issues was answered "Yes." The issues were these: "1. Was there an oral agreement between * * * Cline and Fountain Rock * * * in the year 1949 for the establishment and operation of a stone business on a fifty-fifty basis" and "2. Did * * * Cline agree with Fountain Rock * * * to the terms and provisions of the unsigned lease dated May ...., 1950." The answer to the first issue was "Yes." and to the second, "No." Damages were assessed at $9,125.

The facts as developed by the testimony at the second trial do not differ greatly from those developed by the testimony at the first. A rather full statement with regard to them is contained in our opinion on the first appeal, and we shall not review them in detail here. Among the salient facts out of which this controversy developed are the following: (1) the appellant, Cline, is a general contractor in Frederick; (2) the appellee, Fountain Rock, is a corporation which owns a limestone quarry in Frederick County; (3) John W. Quynn owns 2,001 of the 2,002 issued and outstanding shares of

stock of Fountain Rock (the other share being owned by a member of his immediate family) and he completely controls Fountain Rock and is its general manager; (4) in 1949 an extensive road building program was about to get under way in Frederick County and Quynn and Fountain Rock wanted either to sell the quarry or to get into the stone business (as distinguished from the lime business) and to share in the profits of furnishing stone for the roads program; (5) Fountain Rock was in no position to get into that business because it lacked both equipment and capital; (6) Cline, as a general contractor and as the owner of trucks which could be used to haul stone, was in a position to get such business, either as a prime contractor or as a subcontractor, and he could use Fountain Rock's stone in such business; and (7) there was some arrangement relating to the use by Cline of stone from the Fountain Rock quarry.

Fountain Rock instituted a suit at law against Cline in the Circuit Court for Frederick County on January 11, 1952. (The case was later removed to Carroll County for trial.) The declaration contained the common counts and a special count, which, as slightly amended, alleged that "during the year 1949 the * * * defendant [Cline] agreed with the plaintiff [Fountain Rock] to lease the plaintiff's real estate, plant and equipment and to pay the plaintiff for the same a percentage of profit with guaranteed minimum amount; that the defendant took possession of the plaintiff's property and used it for his own benefit but has never made any payment under his agreement, although the plaintiff has done everything under the contract that it was supposed to do." In response to an order to furnish the particulars of its claim, Fountain Rock filed a bill of particulars consisting of eleven items. Most of them were apparently founded upon the terms of a proposed written lease, dated May ...., 1950, which Quynn executed on behalf of Fountain Rock, but which he never succeeded in getting Cline to execute.

The principal item in controversy on both the first and second appeals is Fountain Rock's claim to a share of the profit which Cline made on a contract or subcontract with Conduit

and Foundation Company (the "Conduit Company"), which had a contract to do some work for the State Roads Commission. This subcontract was to furnish and install stone rip-rap work. The claim is based upon an alleged oral joint adventure agreement between Cline and Fountain Rock made in 1949, at a time when Quynn had been trying to sell the Fountain Rock quarry. The agreement as testified to by Quynn was that if Quynn or Fountain Rock would hold on to the quarry until the end of that year, Cline would put in the crushing equipment and the parties would "go ahead in the stone business." Quynn said that it was understood that they would share the profits equally. On the first appeal Fountain Rock contended that the alleged joint adventure agreement and Fountain Rock's claim for a share of the profits thereunder were properly provable under the eleventh item of the bill of particulars which claimed "special damages for destroying the plaintiff's good will and causing plaintiff's business to be destroyed by the defendant's holding himself out to be the owner of the plaintiff's property and receiving contracts and profits on the strength of his representations." That was the only item in the bill of particulars which Fountain Rock put forward as supporting this claim. We held that this claim was not covered by the bill of particulars and hence that evidence pertaining to it should not have been admitted.

There were also some errors with regard to other items which the jury was allowed to consider at the first trial in awarding damages, and we pointed out that there had been no finding by the jury that the defendant had agreed orally to the terms of the unexecuted lease. We need not now go into any claims based upon the proposed lease, dated May ...., 1950, since, on the second trial, the issue as to whether or not the defendant had ever agreed to it was squarely submitted to the jury, and was answered "No." Under the court's instructions any claims based upon that lease were excluded from the damages which might be allowed, if that issue were answered in the negative.

On the former appeal we noted (at 210 Md. 90, 122 A. 2d 455) that Fountain Rock sought to recover on an oral con-

tract or on two oral contracts, and that the bill of particulars referred to only one. That one was the unexecuted lease, which Fountain Rock claimed Cline had agreed to orally. The bill of particulars did not refer to or rely upon the joint adventure agreement.

The amended declaration filed after the remand of the case undertook to allege both the oral joint adventure agreement of 1949 and the unexecuted or oral lease dated May ...., 1950. This declaration contains six common counts and a special count. This count began with the allegation that "during the year 1949 the said Defendant agreed with the Plaintiff that if the latter would not sell its lime plant and stone quarry, but hold it until the end of that year, the Defendant would purchase certain equipment needed to modernize the plant as a stone quarry and they would go into business together; that the Plaintiff thereupon concentrated its principal officer's and owner's efforts in preparing to further their joint adventure and the Defendant also performed certain acts and spent certain moneys fulfilling their agreement." It also alleged, *inter alia*: that Cline took possession of Fountain Rock's real estate and used it for his own benefit; that in the spring of 1950, when Cline became involved in Federal income tax difficulties, Quynn proposed a lease instead of a joint adventure agreement; that Cline continued to use the property while holding the unsigned lease; that he never rejected the lease and "acted partially under it"; that Quynn continued his efforts to promote the joint adventure; that he demanded that Cline sign the written lease, that Cline, without refusing to sign it, asked for more time, and that Quynn then withdrew the lease; that Cline then accepted a large and remunerative contract [the Conduit Company contract] for himself; and that Cline accepted the advantages and profits from the proposed joint adventure and the proposed lease but failed to pay either a percentage of his profits or the minimum amount provided for in said proposed lease. There followed the enumeration of claims in the nature of a statement of particulars, paragraphs j and k of which asserted claims for: (j) "a share in the profits from the stone business with all stone purchasers until after the acceptance of the

first large contract when Defendant caused Plaintiff to cease his relationship with him." and (k) "special damages for misleading the Plaintiff into relying on the joint adventure or lease agreement from 1949 until 1951 * * *."

In view of the jury's finding with regard to the unexecuted lease the issue is now narrowed to the oral joint adventure agreement and the claims based thereon. To these the defendant pleaded limitations—that the amended declaration set up a new cause of action and that it did not accrue within three years of the filing of the amended declaration.

The original declaration—or rather the first amended declaration—which was before us on the first appeal (and is hereinafter referred to as the "original declaration") set up an oral lease of real estate, plant and equipment, under which the lessee was "to pay a percentage of profit with guaranteed minimum amount." The only words which might suggest a joint adventure are "to pay a percentage of profit." They seem insufficient for the purpose, even in the absence of the bill of particulars. See *Tomlinson v. Dille,* 147 Md. 161, 127 A. 746, where a so called contract of renting under which a landlord was to receive a part of the profits from the operation of a farm by the tenant was held not to create a partnership. In that case the court cited Section 7 (4) of the Uniform Partnership Act. Under Code (1951), Article 73A, Section 7 (4) (b) the receipt by a person of a share of the profits of a business is *prima facie* evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment of rent to a landlord. This appears to be in accord with the general law apart from statute. See 40 *Am. Jur., Partnership,* Section 64. The close resemblance between a joint adventure and a partnership is well recognized. *Atlas Realty Co. v. Galt,* 153 Md. 586, 139 A. 285; *Beard v. Beard,* 185 Md. 178, 44 A. 2d 469; 30 *Am. Jur., Joint Adventures,* Section 5. See also *DeBoy v. Harris,* 207 Md. 212, 113 A. 2d 903. We think that the same rule should apply to a landlord receiving a share of the profits as rent when a joint adventure is claimed to exist as when a partnership is claimed to exist, even though there is no statute dealing with a joint adventure.

When we turn to the original declaration as limited by the bill of particulars, the fact that no joint adventure was alleged is settled by our holding on the first appeal. The question now is whether or not the amended declaration sets forth a new cause of action. If it does, the defense of limitations is available, since the period of limitations must then be measured from the time of the accrual of the cause to the date of filing the amended declaration. *Hamilton v. Thirston,* 94 Md. 253, 51 A. 42; *Di Giorgio Co. v. Stock,* 116 Md. 201, 81 A. 385; *Schuck v. Bramble,* 122 Md. 411, 89 A. 719; *Spencer v. B. & O. R. R.,* 126 Md. 194, 94 A. 660. On the other hand, if the amendment does not introduce a new or different cause of action, the period of limitations must be determined in this case with reference to the date of filing the original declaration. *Wolf v. Bauereis,* 72 Md. 481, 19 A. 1045; *Western Union Telegraph Co. v. State, Use of Nelson,* 82 Md. 293, 33 A. 763; *Zier v. Chesapeake Ry. Co.,* 98 Md. 35, 56 A. 385; *Strasbaugh v. Sanitary Can Co.,* 127 Md. 632, 96 A. 863; *Middendorf, Williams & Co. v. Milburn Co.,* 137 Md. 583, 113 A. 348; *Lichtenberg v. Joyce,* 183 Md. 689, 39 A. 2d 789.

It may be conceded, as the appellee urges, that the fact that restricting the plaintiff in his evidence to proof of items in the bill of particulars (or its equivalent) does not affect his right to amend the declaration. *Poland v. Chessler,* 145 Md. 66, 125 A. 536. That case does not, however, meet the problem here presented, for there was no question of limitations in the *Poland* case.

The office and effect of a bill of particulars have been considered in many Maryland cases. Among them are *Carter v. Tuck,* 3 Gill 248; *Scott v. Leary,* 34 Md. 389; *Black v. Woodrow,* 39 Md. 194; *Attrill v. Patterson,* 58 Md. 226; *Noel Construction Co. v. Armored Concrete Construction Co.,* 120 Md. 237, 87 A. 1049; *Nelson v. Close,* 147 Md. 214, 127 A. 751; *Roth v. Baltimore Trust Co.,* 161 Md. 340, 158 A. 32; *Crawford v. Obrecht,* 171 Md. 562, 189 A. 809; *Weil v. Lambert,* 183 Md. 233, 37 A. 2d 312; *Livingston v. Stewart & Co.,* 194 Md. 155, 69 A. 2d 900; *Mickey v. Sears, Roebuck & Co.,* 196 Md. 326, 76 A. 2d 350; *Hub Bel Air,*

*Inc. v. Hirsch,* 203 Md. 637, 102 A. 2d 550; and *Cline v. Fountain Rock Lime and Brick Co., Inc.,* 210 Md. 78, 122 A. 2d 449, *supra.* The purpose of a bill of particulars is to inform the adverse party of the precise nature of the claim which the plaintiff intends to rely upon under each and every count of the declaration and to confine his evidence to the claim thus stated.

As a general rule, a bill of particulars unless restricted to some particular count applies to all. *Black v. Woodrow, Weil v. Lambert,* both cited above.

When the bill of particulars is filed in answer to a demand, it is considered as embodied in and forming a part of the declaration. *Scott v. Leary; Noel Construction Co. v. Armored Concrete Construction Co.; Crawford v. Obrecht,* all cited above; *Gaver v. Frederick County,* 175 Md. 639, 3 A. 2d 463.

Fountain Rock's original declaration, as particularized in 1952 asserted an oral lease; its declaration as amended in 1956 asserted an oral joint adventure agreement, superseded or possibly superseded by an oral lease.

The situation in the present case is in most respects closer to that in *Hamilton v. Thirston,* first appeal, 93 Md. 213, 48 A. 709, and second appeal, 94 Md. 253, 51 A. 42, than any other Maryland cases. There the original suit was based upon an alleged oral contract by the decedent to devise and bequeath real and personal property equivalent to a child's share to the plaintiff, who was the decedent's nephew, in return for services to be rendered by the plaintiff during the remainder of the uncle's life. There was no count in the declaration on a *quantum meruit* for the services rendered by the appellee. The alleged oral agreement was held unenforceable because of the Statute of Frauds, but this Court said (at 93 Md. 220): "Although the appellee is not entitled to maintain the present action upon the alleged contract, he can recover upon a *quantum meruit* the value of the services rendered by him to his uncle, for from services of this kind, even when rendered in pursuance of a contract within the statute by one party and accepted by the other, a right to compensation arises." After remand the plaintiff

filed an amended declaration so as to assert a claim in *assumpsit* based upon a *quantum meruit* for services rendered the intestate during his lifetime. The defendants set up a number of defenses, including limitations. The evidence showed that none of the services for which recovery was sought was rendered within three years of the amendment of the declaration, and the defense of limitations was held good. This Court said (94 Md. at 256): "The original declaration was a suit upon an alleged oral agreement and there was no count in the declaration on a *quantum meruit* for the value of the services rendered. The present suit, under the amendment, is an action in *assumpsit,* on a *quantum meruit,* and is a new case."

The instant case differs from the *Hamilton v. Thirston* cases in that there have been claims on the common counts in *assumpsit* under which recovery might have been had on a *quantum meruit* from the time the original declaration was filed. The appellee's main difficulty on the first appeal in this case was that he had so narrowed his claim by his bill of particulars asserting an oral lease as to exclude any claim based upon an agreement to share the profits of the stone business derived from the Conduit Company contract. If a claim based upon a joint adventure agreement had been substantially the same as a claim based upon an oral lease, and if Fountain Rock had fully performed its agreement, recovery might perhaps have been had under the common counts, notwithstanding failure to prove the special contract alleged by the plaintiff. See *Weil v. Lambert, supra,* and cases therein cited. *Weil v. Lambert* was primarily a suit for services as agent in charge of an office building owned by a decedent, and the amount of compensation was to be a percentage of the rents collected. Because of the Evidence Statute (or "Dead Man's Statute"), Code (1951), Article 35, Section 3, the plaintiff could not establish his claim in its full amount. An instruction to the jury was upheld which permitted the plaintiff to recover either on a special agreement, if the jury found that there was one, or on *quantum meruit,* if there was no express contract as to compensation. This Court said (183 Md. at 241): "It is, of course, true that recovery is

limited to the services alleged in the bill of particulars and recovery cannot be had for other and different services." See also *School Com'rs of Allegany County v. Adams,* 43 Md. 349.

Applying a similar test to the present suit, recovery could not be had under a different contract from that alleged in the original declaration as limited by the bill of particulars, and that was the result of the first appeal.

The problem of determining what constitutes a new cause of action is not an easy one. The subject is approached today with less rigor than formerly. *Clark on Code Pleading* (2nd Ed., 1947), under the heading "Amendments and the Statute of Limitations", states the general rule (Section 118, page 729) as follows: "Where the statute of limitations would bar the bringing of a new suit at the time an amendment is offered in the pending suit, the amendment must refer to the cause of action which was stated in the original complaint or it will be refused. As in the case of amendments generally, the courts at first considered a change in legal theory only to be a change violating this rule; but now in all but a few jurisdictions the amendment is allowed if it refers to the same general aggregate of operative facts upon which the original complaint was based."

In comment, at page 731, the learned author continues: "The term ['cause of action'] should be interpreted as referring to facts upon which one or more rights of action are based, rather than the rights themselves. Hence a change in legal theory only should not be considered the statement of a new cause. And unless there has been so great a change in the material operative facts that an entirely different fact situation is presented, the amendment should be allowed. This is the theory of the Federal Rules [F.R.C.P. 15(c)], which is reached through the device of relating back to the original complaint or defense any amendment stating a claim or defense arising out of the 'conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.' "

A bill of particulars may not be a very useful instrument in the administration of justice today. See Clark, *op. cit.,*

Section 54, which characterizes it as a nuisance, and Judge Henderson's comment in *Hub Bel Air, Inc. v. Hirsch, supra* (203 Md. at 641), which agrees with Judge Clark that its functions have been largely superseded by the modern rules of discovery, pre-trial conference and summary judgment. However, it still exists under our practice; and when invoked, it cannot be denied effect. We must, therefore, take the original declaration as limited by the bill of particulars in comparing the cause of action there stated with that set forth in the amended declaration.

Rule 15(c) of the Federal Rules of Civil Procedure, above referred to, deals with the question of what constitutes a new cause of action in terms of modern legal thought. It reads as follows:

"Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

Articles in 45 *W. Va. L. Q.* 5 and 4 *John Marshall L. Q.* 291 point out the very broad scope of this rule. The latter article states that it "makes a mere 'attempt' to state a case enough to protect you. It would be a most peculiar situation in which you could not say you 'attempted' to state your cause of action. Hence, if you file any pleading at all, you are guaranteed that the statute of limitations cannot be invoked against you." We know of no Maryland equivalent of Rule 15(c), nor have the decisions of the Federal courts fully sustained the care-free optimism of the writer of the article in the John Marshall Law Quarterly quoted above. See, for example, *Stafford v. Roadway Transit Co.* (C. C. A., 3rd), 165 F. 2d 920, where an amendment in a suit for wrongful death was held improperly allowed, since it introduced a new cause of action which was barred by limitations, and *Soden v. First National Bank of Kansas City* (D. C., Mo.), 74 F. Supp. 498, in which an amendment was disallowed which would have changed the cause of action from one to set aside a deed and trust indenture on the ground of mental incompetence to one to set it aside on the ground of undue influence,

since the amendment would have introduced a new cause of action barred by limitations. See also *Fern v. U. S.* (C. A., 9th), 213 F. 2d 674. As these and others of the numerous cases cited in the annotation to Rule 15(c) under note 23, headed "Limitation." will attest, it is still a pertinent inquiry under that Rule whether an amendment does or does not present a new cause of action, if the amendment is made after the time when limitations would have run, but for the "relation back" provision of that Rule.

The Circuit Court rested its holding that the amended declaration did not involve a new cause of action upon two grounds: first, that the cause of action remained the same in substance, notwithstanding differences of specifications; second, that recovery under the original declaration would be a bar to recovery under the amended declaration.

For the first of these grounds it relied upon *Cockrell v. First Federal Svgs. & Loan Ass'n* (Mun. Ct. of App., D. C.), 33 A. 2d 621. That was a suit to recover payments of usurious interest. Amendments changing the date and amount of the loan and the amount of damages were held permissible because the cause of action remained the same in substance —usury. We do not question the correctness of that holding, but we think it is not apposite to the present case where the declaration shifted the cause of action from a lease to a joint adventure.

For the second of its grounds of decision the Circuit Court relied upon *Rose v. Standard Oil Co. of N. Y.,* 56 R. I. 272, 185 A. 251. That was a suit by an adjoining landowner against an oil refining company for injury to the plaintiff's land resulting from the seepage of petroleum products from the defendant's oil refinery. The amended declaration was fuller and more precise than the original declaration as to how the alleged nuisance was created, and it alleged, as the original declaration did not, that the nuisance was caused by negligence on the part of the defendant. The Supreme Court of Rhode Island held that there was no inconsistency between the two declarations, since the damages, the alleged nuisance and the statement of how it was caused were all the same under both declarations, with the exceptions noted, and it held

that the case remained a case of nuisance. Under both declarations the cause of action was "trespass on the case for causing a nuisance." At an earlier stage of the case the court had held the declaration insufficient because of the failure to allege negligence on the part of the defendant. On the second review the court pointed out that under the law of Rhode Island, a nuisance may or may not be actionable without the element of negligence in its causation, according to the nature of the nuisance. Again without questioning the soundness of the decision cited, we do not see its applicability to the instant case.

Nor do the Maryland cases in which amendments were held not to state new causes of action resemble the instant case on their facts. In *Western Union Telegraph Co. v. State, Use of Nelson, supra,* an amendment was held to be merely a correction of the corporate name of the defendant and not to amount to the statement of a new cause of action. In *Zier v. Chesapeake Ry. Co., supra,* the original declaration alleged that the death of the plaintiff's intestate was due to negligence of the defendant on the part of its employees. The amended declaration alleged negligence on the part of the defendant in selecting fellow employees of the decedent. This court held that the cause of action was still based upon the negligence of the defendant. In *Strasbaugh v. Sanitary Can Co., supra,* an amendment which changed the date of the contract of sale relied upon, without any change in the quantity, price or date of delivery of the goods was held not to state a new cause of action. In *Middendorf, Williams & Co. v. Milburn Co., supra,* amendments to the bill of particulars stating damages of a different character from those originally alleged was held not to involve a new cause of action, since all of the damages alleged were said to flow from the breach of an agreement by a stock brokerage firm to market stock of the plaintiff company. Finally, in *Lichtenberg v. Joyce, supra,* an amended declaration based upon an assessment made by the trial court against members of a mutual insurance company was held not to involve a new cause of action where the original declaration had been based upon an assessment first made by the directors of the company and later ratified by the same trial court,

and the assessment made by the directors had been held invalid and the purported order of ratification had been held invalid as such, but valid as an original assessment.

In our opinion, a lease of real estate, plant and equipment is a very different contract from a joint adventure agreement. Though the conversations between Messrs. Quynn and Cline might have resulted in either and to that extent a suit based upon either may be said in the words of F.R.C.P. 15 (c) to have arisen "out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading," we think that it cannot be said that the evidence which would support the one would support the other, that a judgment in favor of Cline on one would preclude a suit on the other, or that to substitute a contract to go into business with another as joint adventurers is merely to place a correct legal interpretation upon a conversation previously said to have resulted in an oral lease. There is clear evidence that Mr. Quynn did not entertain this last idea. He was most anxious to avoid unpleasant consequences which he feared might fall upon him as a result of Mr. Cline's income tax difficulties under a joint adventure agreement with Mr. Cline and he sought what he regarded as the safe insulation from any such consequences which would be afforded by a lease—even a lease with a percentage of profit. Why he elected to declare exclusively on the lease when he has so persistently asserted the joint adventure agreement in his testimony is not explained. The result is unfortunate for him, but we cannot do for him what he did not do for himself, nor can we deprive the defendant of the protection which the statute of limitations affords him, even though we may not regard his conduct towards Fountain Rock and Mr. Quynn as meriting protection.

Our conclusion on the question of limitations determines the case and there is no need to consider any other questions. In accordance with our conclusion on that subject the judgment will be reversed without a new trial.

*Judgment reversed, with costs, without a new trial.*